[No. C054294. Third Dist. May 19, 2008.]

GEORGE W. ADAIR et al., Plaintiffs and Respondents, v. STOCKTON UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

## COUNSEL

Stubbs & Leone, Louis A. Leone, Marina B. Pitts, Nancy Huneke and Patricia J. Parker for Defendants and Appellants.

Driscoll & Associates and Thomas J. Driscoll, Jr., for Plaintiffs and Respondents.

## OPINION

**BUTZ, J.**—In order to reduce salary stagnation among mid- to upper-level teachers and stay competitive with other area school districts, the Stockton Unified School District and the Stockton Teachers Association (STA) entered into a collective bargaining agreement for a new, "compressed" salary schedule, allowing teachers to obtain merit increases in salary more quickly.

After the school district implemented the agreement by reassigning certain teachers to "step" levels that did not correspond with their years of experience, certain individual senior teachers and the STA (collectively, the Teachers) filed a petition for writ of mandate against the Stockton Unified School District, its governing board and superintendent (collectively, the District), claiming that the District's actions violated Education Code section 45028,[1] which requires that teacher salaries "shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." (§ 45028, subd. (a).)

The trial court agreed with the Teachers that the District's formulation of the compressed schedule constituted a uniformity violation. The court also ruled that no statutory exception to the uniformity requirement existed and that the Teachers had not waived their right to relief by virtue of the STA's ratification of the contract. The court ordered the District to restore the "experience credit" that the affected teachers had lost due to the implementation of the new schedule.

The District appeals, claiming (1) the compressed schedule as adopted did not violate the uniformity requirement of section 45028; (2) if the new system was not uniform, it fell within the "other criteria" exception to the uniformity requirement set forth in Government Code section 3543.2; and

---

[1] Undesignated statutory references are to the Education Code. In 2006, the paragraphs of section 45028, subdivision (a) were given numerical designations (1) through (3), without any change in wording. For clarity, all references to section 45028, subdivision (a) in this opinion are to the version of the statute that existed at the time of the collective bargaining agreement in November 2000. (Stats. 1996, ch. 959, § 1, p. 5691.)

(3) assuming there was a uniformity violation and that no exception applied, the writ remedy exceeded the trial court's mandate jurisdiction and unduly interfered with the right of contract.

We agree with the trial court that the District's implementation of the salary schedule violated the uniformity requirement of section 45028. We also conclude that no exception applied and that the trial court did not exceed its powers in remedying the violation. We shall affirm the judgment granting mandamus relief to the Teachers.

## FACTUAL AND PROCEDURAL BACKGROUND

*Negotiations and agreement*

Prior to July of 2000, District teacher salaries were set according to a 27-step schedule featuring horizontal and vertical grid lines. The six classifications running horizontally across the grid (classes A through F) represented a teacher's level of course work training. The 27 numbered classifications running vertically down the grid represented the number of years of teaching experience. A teacher's salary was determined by which step, or cell, a teacher fell into on the grid. (See table A, appen., *post*, at p. 1454.)[2]

In the fall of 2000, the District and the STA, the collective bargaining unit for District teachers, entered into negotiations for a new salary schedule. A chief objective for both sides was to make Stockton more competitive with neighboring school districts such as Modesto, Tracy and Lodi for teachers in the mid- to high-salary levels. The STA was also concerned about salary stagnation, since other districts allowed teachers to reach the high end of the salary scale much sooner than they did in Stockton.[3] The idea of compressing the salary schedule was proposed by the STA as a means of enabling teachers to reach the high end of the salary ladder more quickly.

In addition to salary raises for all teachers, the parties agreed to eliminate steps 17, 18 and 19, renumber step 20 to step 17, step 21 to step 18, and all subsequent steps accordingly so that the former 27-step schedule now consisted of 24 steps. (Cf. tables A & B, appen., *post*, at pp. 1454, 1455.)

---

[2] Tables A and B (appen., *post*, at pp. 1454, 1455), which are derived from the actual salary schedules that were before the trial court, consist of excerpted portions of the salary schedules (beginning with step 12) before and after the negotiated agreement that is the subject of this action. These tables appear in the District's opening brief and the Teachers also refer to them in the respondent's brief.

[3] As table A (appen., *post*, at p. 1454) illustrates, teachers in classes A, B and C with 12 years of experience could not advance to the next step in salary level until they had 21 years of experience, essentially "stagnating" for nine years at the same level.

An agreement, which called for both a salary increase and a compressed salary schedule, retroactive to July 1, 2000, was signed in November 2000.[4] After the agreement was signed, the District moved all teachers who had 17, 18, 19 and 20 years of experience into step 17. As a result, the step number assigned to teachers with 18 or more years of service no longer corresponded with their accrued years of experience. For example, a teacher with 18 years of experience was moved back one step, to step 17; a teacher with 19 years of experience was moved back two steps, to step 17; and a teacher with 20 years of experience was moved back three steps, to step 17. The District continued to credit each teacher for his or her number of years of experience with respect to benefits, seniority and retirement. The net effect of the District's actions was to enable teachers with 17 years of experience or fewer to move up the salary ladder faster. (See tables A & B, appen., *post*, at pp. 1454, 1455.)

*The petition for writ of mandate*

In January 2004, the Teachers filed a petition for writ of mandate. The petition was predicated on section 45028, which mandates that all teacher salary schedules be uniform when based on years of experience and training. Petitioners alleged that the District violated the mandate by "regressing teachers with 18, 19 and 20 years [of] experience on the salary schedule back to Step 17." As a result, "[w]hile teachers on Steps 1 through 16 . . . will progress through the schedule in 24 years . . . , Petitioners at Steps 18 through 26 . . . will be required to work 25 through 27 years, or more, to attain the same 24 years of credit." Petitioners concluded that "[i]n effect, one to three years of actual teaching experience [were] eliminated for the affected teachers, treating them disparately solely as to years of experience."

The petition prayed for reinstatement of all aggrieved teachers on the schedule according to a uniform credit for each year of experience, and restoration of all compensation and corresponding benefits of which the petitioners had been unlawfully deprived.

*Trial and judgment*

After extensive briefing and a hearing on the merits, the trial court granted the writ of mandate. The court ruled that, by moving all teachers in steps 18 through 20 into step 17, the District deprived teachers who had been in steps 18 through 26 on the 27-step schedule of one to three years of experience credit. By contrast, teachers who were in steps 1 through 17 lost no experience credit.

---

[4] The document was captioned "Tentative Agreement," but became the final agreement when it was ratified by all parties.

The court concluded that this scheme "lacked the uniformity mandated by Education Code section 45028" inasmuch as the parties never agreed to any factors, other than years of experience and training, as the criteria upon which the disputed salary schedule operated.

Determining that the District's "regression" of step levels deprived petitioners of the full compensation to which they were entitled, the trial court directed recalculation of their compensation based upon actual years of earned experience, "without the one[-] to three[-]year regression." The court ordered that the District restore all such lost compensation as well as corresponding retirement contributions.

## DISCUSSION

### I. Principles of Review and Statutory Background

#### A. General Principles of Review

█ The question we face is whether the District's implementation of the compressed salary schedule violated the uniformity requirement of section 45028 and, if so, whether any statutory exception to the requirement applies. Where the facts are undisputed, an appellate court reviews issues of statutory interpretation de novo. (*California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 190 [115 Cal.Rptr.2d 323] (*Hilmar*).) As stated in *Hilmar*, " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*Id.* at p. 191.)

#### B. Historical Background of Education Code Section 45028 and Government Code Section 3543.2

In the 1960's, section 45028 (then § 13506) empowered school districts to adopt any salary schedule based on "reasonable classifications." (*Hilmar, supra,* 95 Cal.App.4th at p. 191.) Salary schedules based on years of training and experience were permissible as long as they were not arbitrary, discriminatory or unreasonable. (See *Rible v. Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455]; *Shoban v. Board of Trustees* (1969) 276 Cal.App.2d 534, 541

[81 Cal.Rptr. 112].) However, "[i]n 1969 the Legislature amended section 45028 (then § 13506) and greatly reduced the flexibility of school districts in fixing compensation of teachers. The amendment mandated that teachers be classified for salary purposes and required that the classification 'proceed *wholly* on a uniform basis of years of training and years of experience.' " (*Hilmar, supra,* 95 Cal.App.4th at p. 191, quoting *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 661 [147 Cal.Rptr. 359, 580 P.2d 1155] (*Palos Verdes*).) "As amended, section 45028 was interpreted to mean 'that years of education and years of experience . . . were the only criteria that could be used in setting teachers' salaries.' " (*Hilmar, supra,* at p. 191, quoting *California Teachers' Assn. v. Livingston Union School Dist.* (1990) 219 Cal.App.3d 1503, 1522 [269 Cal.Rptr. 160] (*Livingston*).)

In 1983 the Legislature added subdivision (d) to Government Code section 3543.2 (Stats. 1983, ch. 498, § 128, pp. 2144–2145) thereby " 'loosening the interpretation given [Education Code] section 45028 and allowing the parties to reach agreement [for additional compensation] on criteria that are separate from years of training and years of experience.' " (*Hilmar, supra,* 95 Cal.App.4th at pp. 191–192, quoting *Livingston, supra,* 219 Cal.App.3d at p. 1522.)

However, due to a series of court decisions imposing a restrictive interpretation of the 1983 amendment, the Legislature amended the law again in 1996. "Senate Bill No. 98 amended section 45028 by allowing a school district and a teacher's union to 'agree to a *salary schedule* based on criteria other than a uniform allowance for years of training and years of experience.' (§ 45028, subd. (a).) The Legislative Counsel's Digest indicates the exception added to section 45028, together with the addition of Government Code section 3543.2, subdivision (e), changed then existing law by requiring 'a public school employer and the exclusive representative, upon the request of either party, to negotiate and mutually agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience.' (Legis. Counsel's Dig., Sen. Bill No. 98 (1995–1996 Reg. Sess.) Stats. 1996, ch. 959.)" (*Hilmar, supra,* 95 Cal.App.4th at p. 192, italics added, fn. omitted.)

Thus, at the time the collective bargaining agreement here was negotiated, section 45028 read, in pertinent part, "Effective July 1, 1970, each person employed by a school district in a position requiring certification qualifications . . . *shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience, except* if a public school employer and the exclusive representative negotiate and mutually agree to a salary schedule based on criteria other than a uniform allowance

for years of training and years of experience pursuant to Chapter 10.7 (commencing with Section 3540) of the Government Code." (§ 45028, subd. (a), italics added.)

Government Code section 3543.2, subdivision (e), enacted in 1996, grants the following exception to the uniformity rule: "Pursuant to Section 45028 of the Education Code, the public school employer and the exclusive representative shall, *upon the request of either party, meet and negotiate a salary schedule based on criteria other than a uniform allowance for years of training and years of experience.* If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code requiring a salary schedule based upon a uniform allowance for years of training and years of experience shall apply. A salary schedule established pursuant to this subdivision shall not result in the reduction of the salary of any teacher." (Italics added.)[5]

In *Hilmar*, the appellate court construed the 1996 legislation to provide "the most flexibility to school districts and teachers' unions in the bargaining process while requiring one or more bargained-for factors to justify disparate pay between teachers of equal training and experience." (*Hilmar, supra*, 95 Cal.App.4th at pp. 196–197.) In that case, the court held that "a one-time payment to teachers does not violate the uniform pay provisions of section 45028 or the legislative purposes underlying that section if at least one criterion upon which the payment is based is neither years of training nor years of experience." (*Id.* at p. 197.)

## II. The District Violated the Uniformity Requirement

Section 45028 mandates that, when teacher salary schedules operate on the basis of education and experience, they must be *wholly* uniform. (*Palos Verdes, supra*, 21 Cal.3d at p. 661.) "Uniform" means "[c]onforming to one principle, standard, or rule; consistent" with or "[b]eing the same as or consonant with another or others." (American Heritage Dict. of the English Language (4th ed. 2000) <http://www.bartleby.com/61/95/U0079500.html> [as of May 19, 2008].) A "uniform" salary schedule means that teachers will be compensated invariably according to their seniority and education. Such a rule forbids disparate treatment of groups of teachers with the same level of training and years of experience. Thus, in *Palos Verdes*, a teacher with one year of public school experience and five years of private school experience

---

[5] The earlier-enacted subdivision (d) of Government Code section 3543.2 granted an exception to the uniformity rule only for "additional compensation" paid to teachers. That subdivision is not applicable here because the subject salary schedule does not involve additional compensation.

was credited, according to then-applicable rules, with only one year of experience. A year later, the standard was altered to allow full credit for teaching in any accredited school, whether public or private. The teacher requested reclassification according to the new rule. When the school district refused, he filed a petition for writ of mandate. (*Palos Verdes, supra,* 21 Cal.3d at p. 654.) The California Supreme Court upheld the issuance of a writ ordering the reclassification, holding that the district's disparate treatment of teachers with private school teaching experience violated the uniformity requirement. (*Id.* at pp. 660–662.)

In *San Francisco Classroom Teachers Assn. v. San Francisco Unified School Dist.* (1987) 196 Cal.App.3d 627 [242 Cal.Rptr. 352], the district imposed a rule which provided unequal credit for teachers with the same training and experience solely on the basis of the *order* in which their years of experience and education accrued. (*Id.* at p. 633.) Thus, a teacher's failure to take additional education credits by the time he or she reached a certain level of seniority resulted in a denial of experience credit to which he or she otherwise would have been entitled. (*Id.* at p. 634.) The appellate court held that a system which " 'preclude[d] teachers from receiving credit for experience solely due to their seniority within the system' " (*ibid.*) was incompatible with the uniformity requirement of section 45028 (*San Francisco,* at pp. 633–634).

While it is undisputed that the renumbering of steps increased the ability of teachers with 17 years of experience or less to get merit pay increases more quickly, the District's reassignment of all teachers in steps 17 through 20 to step 17 unfairly penalized those teachers with 18 to 26 years' experience, creating nonuniform treatment among teachers with equal levels of training. We illustrate this inequality by comparing tables C, D and E attached to this opinion (appen., *post,* at p. 1456). The tables show a hypothetical advancement up the salary scale of three teachers with the same level of training (class F) under the compressed system as formulated by the District. Because we must compare apples with apples and not oranges, cost-of-living increases are not factored into these tables.

Table C (appen., *post,* at p. 1456) depicts the case of Teacher "X," who has 16 years of experience before the new schedule. After the implementation of the new schedule, her step number still corresponds to her number of years of experience. Thus, after 17 years of experience, her pay is bumped up from $63,240 to $64,007. The year after, she reaches step 18 and gets a raise to $64,774 annually. After her 21st and 24th years, she will attain salaries of $65,539 and $68,003, respectively.

Table D (appen., *post*, at p. 1456) reflects what happens to Teacher "Y," who has 19 years of experience before the adoption of the compressed schedule. Although he has 19 years of experience, he is now funneled into step 17. The next year, after 20 years of experience, he reaches step 18 and gets bumped up to $64,774. He reaches step 21 after 23 years of experience, thereby garnering a merit increase to $65,539. Finally, after teaching for 26 years, he reaches step 24 and attains the highest salary of $68,003.

Table E (appen., *post*, at p. 1456) illustrates the case of Teacher "Z," who has 21 years of experience and who is earning $64,774 at step 21, which is converted to step 18 under the new schedule. After 24 years of experience, she advances to step 21 and gets a salary increase to $65,539. After completing her 27th year, she reaches the highest step, step 24, and earns $68,003.

Under the District's version of the compressed system, Teacher X will only need 24 years to reach the highest salary level of $68,003 (table C). On the other hand, Teacher Y must teach for 26 years to attain the same salary level (table D), while Teacher Z must teach for 27 years to get to the highest salary level (table E). (See tables C, D & E, appen., *post*, at p. 1456.)

By artificially limiting the more experienced teachers' advancement up the salary ladder, the restructured schedule treats them as second-class employees, requiring that they work longer than other teachers with the same training to obtain the same merit increases. As a consequence, multiple groups of teachers with the same training are accumulating experience credit (and moving up the salary ladder) at different rates. This is not uniform treatment.

Without citation to authority, the District contends that its system does not violate the uniformity requirement because all teachers in a given step number having the same level of experience and same level of training receive the same salary.

■ However, it is illogical and myopic to focus on a single cell of the schedule and declare the entire schedule uniform simply because all members in a given cell receive the same salary and benefits. A system in which one class of teachers must work one, two or three years longer than another group with the same course training to obtain the same merit salary increases fails to grant credit for experience and training uniformly, and thus violates section 45028's requirement that teacher salaries be *wholly* commensurate with years of experience and training. (*Palos Verdes, supra,* 21 Cal.3d at p. 661.)

The situation of those teachers receiving the short end of the stick here is comparable to that in *United Teachers of Ukiah v. Board of Education* (1988) 201 Cal.App.3d 632 [251 Cal.Rptr. 499] (*Ukiah*), where the Ukiah school district had a rule granting teachers a maximum of five years' credit for experience outside the district. In order to attract "exceptionally gifted" teachers from outside the district, the district accepted them into service with full credit for all years of outside experience. (*Id.* at p. 636.) Teachers who were already employed and limited by the five-year rule sued, claiming that section 45028 entitled them to the same credit. (*Ukiah*, at p. 636.) The Court of Appeal agreed, holding that the hiring policy violated section 45028, since it resulted in some teachers receiving credit for all prior experience and others being subject to a limitation. (*Ukiah*, at pp. 640–642.)

Even more on point is *California Teachers Assn. v. Board of Education* (1982) 129 Cal.App.3d 826 [181 Cal.Rptr. 432] (*Whittier*) in which the Whittier school board imposed a rule limiting a teacher to only one vertical step advancement in any one-year period. "When this rule is applied to a teacher who has been at the maximum step of a class for more than one year and who then moves to a higher class, it has the effect of placing that teacher at a step *below her or his number of years of experience* [on the salary schedule]." (*Id.* at p. 829, italics added.) The appellate court held that the rule, which "precludes teachers from receiving credit for experience solely due to their seniority within the system" (*id.* at p. 831), violated the uniformity mandate of section 45028 (*Whittier*, at pp. 832–833).

■ Here, the District's action pushed some teachers but not others into step levels below their years of experience. Thus, while less experienced teachers move up the salary ladder at a rate of one step per year, more experienced teachers were *regressed* to step levels below their number of years of experience. Like the board's rule in *Whittier*, this policy had the effect of hindering the salary advancement of one group of teachers based solely on their seniority within the system.[6] (See *Whittier, supra,* 129 Cal.App.3d at p. 829.)

We conclude that, by reassigning certain teachers to step levels below their years of experience in pursuit of the new, compressed schedule, the District violated the uniformity requirement of section 45028.

---

[6] The District claims that a uniformity violation cannot be predicated on a comparison of the "old" schedule with the new one because teachers are always treated differently once a new salary schedule is adopted. However, it is undisputable that the District's implementation of the compressed schedule penalizes teachers with 18 or more years of experience by making them work longer than their less senior counterparts to reach the same salary brackets. This disparity manifests itself without "looking back" at any other schedule.

### III. No Exceptions to the Uniformity Mandate Are
### Present Here

The District claims that, even if its system results in a uniformity violation, such a practice is justified by the "other criteria" exception found in Government Code section 3543.2. As noted, subdivision (e) of section 3543.2 permits the parties to negotiate a collective bargaining agreement "based on criteria other than a uniform allowance for years of training and years of experience." (See *ante*, at p. 1444.)

Citing a variety of Legislature materials indicating that the exception should be broadly interpreted to give school districts maximum flexibility in setting teacher compensation, the District asserts that the goal of encouraging teacher recruitment and retention permits a policy of allowing newer teachers to ascend the salary ladder faster than more experienced ones. The argument fails because the District's *rationale* or *motivation* for adopting a nonuniform schedule is not a "criterion" upon which such a schedule is based.

A criterion denotes a "standard" or "principle for evaluating or testing something." (Dictionary.com Unabridged (vol. 1.1) [based on Random House Unabridged Dict. (2006)] <http://dictionary.reference.com/browse/criterion> [as of May 19, 2008].) Under the new system, the only touchstones for determining into which step a teacher will be placed are years of experience and training. These two variables are the sole *criteria* upon which the salary schedule operates. This is not a case where the negotiated agreement provides that some criterion other than experience or training shall result in a different salary for those teachers who satisfy it. For example, the parties could have bargained for a schedule in which teachers assigned to special-needs children or who teach in economically depressed areas would be entitled to preferential salary treatment. That is not what occurred here. The District's system is governed solely by length of experience and level of training.

A nonuniform salary structure is not permissible merely because one or both parties may be "motivated" by some external reason to make it so. The District accuses the STA and the trial court of imposing a "strict" rather than an expansive interpretation of the "other criteria" exception set forth in Government Code section 3543.2. However, the statute becomes relevant only if the District's scheme *operated* on criteria that did not consist of years of experience and training. Where the parties do not bargain for other criteria, the law expressly provides that the uniformity mandate of section 45028

applies. (Ed. Code, § 45028, subd. (a); Gov. Code, § 3543.2, subd. (e).) Accordingly, none of the legislative source materials, which the District claims support an "expansive" interpretation of Government Code section 3543.2, are of any assistance to our inquiry.[7]

Because the salary structure imposed on the District after execution of the 2000 collective bargaining agreement did not operate on any criteria other than experience and training, the trial court properly held that the exceptions set forth in Government Code section 3543.2 did not apply.

### IV. The Trial Court's Remedy Was Free from Error

The District contends that, even if there was a uniformity violation and no exception applied, the trial court's remedy exceeded its powers.

We find the judgment to be a bit murky. The peremptory writ commands the District to "[r]estore all salary schedule experience credit lost by Petitioners . . . in the restoration of the 24[-][s]tep [s]chedule . . . by restoration of the one[-] to three[-]year reduction suffered by such teachers in the implementation of that schedule." As we understand it, this means that the District must transfer all teachers with 18 to 20 years of experience out of step 17 and into the step corresponding with their years of experience. Hence, teachers with 18 years of experience must be assigned to step 18, 19-year veterans must be assigned to step 19, and so on until the highest step, step 24, is reached.

The District protests that this gives petitioners "non-negotiated" salary increases of more than $1 million. It claims that the trial court effectively granted the Teachers "unbargained for" relief that exceeded its mandate jurisdiction, violated the separation of powers and constituted an unwarranted interference with the right of contract. The District maintains that if its compressed schedule was unlawful, the proper remedy was to nullify the compressed schedule (par. 4) from the remainder of the collective bargaining agreement, thereby reinstating the old 27-step schedule. This argument overlooks the fact that paragraph 4 is itself severable and that the trial court's writ merely severed the illegal segment from the rest of the agreement.

---

[7] Because we reach our conclusion independently, we need not pass on the correctness of the trial court's suggestion that the District may have been bound by an admission in discovery that years of experience and training were the only criteria used in its schedule. Likewise, because we find the schedule devoid of ambiguity, we need not resort to the District's judicially noticed "extrinsic evidence" purportedly showing under "what criteria" the parties intended the schedule to operate.

Paragraph 4 of the ratified agreement between the STA and the District calls for "Elimination of Steps 17, 18 and 19 effective July 1, 2000, and renumbering of steps (*see Attachment B*)." (Italics added.) Attachment B contains a grid schedule which shows the reassignment of all teachers in steps 17 through 20 into step 17.

We perceive no illegality in the portion of paragraph 4 that eliminates steps 17 through 19 and renumbers the steps. Moreover, such a shortened schedule achieves the very goals that the District extols: It allows teachers to earn salary raises more quickly, reduces salary stagnation and promotes competition with other districts.

Attachment B, however, effects a uniformity violation by calling for the reassignment of teachers in steps 18 through 20 into step 17, thereby resulting in a slower climb up the salary ladder for teachers with more than 17 years of experience than for their less experienced counterparts.

■ It is settled that where a contract has both void and valid provisions, a court may sever the void provision and enforce the remainder of the contract. (Civ. Code, § 1599; *Hedges v. Frink* (1917) 174 Cal. 552, 554–555 [163 P. 884]; *Symcox v. Zuk* (1963) 221 Cal.App.2d 383, 389 [34 Cal.Rptr. 462]; Rest.2d Contracts, § 184, p. 30.) California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 422, pp. 463–464, and cases cited therein.)

By, in effect, voiding Attachment B and directing that all teachers be assigned step numbers corresponding with their years of service, the trial court severed the illegal portion of paragraph 4 of the agreement from the valid portion of it, in order to achieve substantial justice between the parties.

This remedy is not only sound application of contract law, it is especially appropriate to a collective bargaining agreement, where the agreed-upon salary schedule is lawful and the only effect of enforcing Attachment B would be to deprive petitioners of the benefits of section 45028.

The case of *United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510 [29 Cal.Rptr.2d 897] (*United Teachers—L.A.*) is particularly instructive on this point. There, a union and the Los Angeles Unified School District entered into a collective bargaining agreement allowing permanent employees to convert to part-time status without losing retirement or other benefits, in accordance with stipulated regulations. The

regulations conflicted with Education Code statutes requiring that certain provisions be included in all part-time employment contracts. (*Id.* at pp. 1513–1514.)

Some district employees filed a petition for writ of mandate to compel their acceptance into part-time status under the agreement. (*United Teachers—L.A., supra,* 24 Cal.App.4th at p. 1512.) While sympathizing with petitioners' position, the trial court refused to grant the petition as worded, since the district's regulations did not comply with controlling statutes. (*Id.* at p. 1514.) The Court of Appeal for the Second Appellate District, Division Seven ordered the trial court to grant the petition.

The Court of Appeal first observed that, while sections 44922 and 22724 as then written gave school districts discretion to adopt a part-time leave program, once a program was adopted it had to include the mandatory regulations set forth therein, which were at odds with those adopted by the school district. (*United Teachers—L.A., supra,* 24 Cal.App.4th at pp. 1515–1516.)

The court in *United Teachers—L.A.* pointed out that the regulations not in compliance with the Education Code could not be enforced against the employees by virtue of section 44924, which provides, " 'any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void.' " (*United Teachers—L.A., supra,* 24 Cal.App.4th at p. 1517, quoting § 44924.) Reviewing the history of section 44924, the court noted that the statute "has consistently been employed to render null and void conflicting contractual provisions *and to essentially reform the contract or agreement to comply with the requirements of the controlling statutes.*" (*United Teachers—L.A.,* at p. 1518, italics added.) The court concluded: "It is *therefore not necessary in this case to declare the entire contract void, but only those regulations in the collective bargaining agreement which directly contradict the otherwise clear statutory mandate.* [¶] Moreover, public policy considerations counsel liberal enforcement of section 44924. In addition to issues of equity and fairness, one of the purposes of section 44924 is uniformity of treatment in the education system statewide." (*Id.* at p. 1519.) Thus, the trial court should have granted petitioners relief by enforcing the district's option to allow part-time conversion, but only under regulations consistent with controlling statutes. (*Ibid.*)

Likewise, the appellate court in *Ukiah* held that where the school district granted preferential treatment to newly hired teachers (by allowing them full

credit for outside experience) but not current ones, the proper remedy under section 45028 was to order that *all teachers* reap the benefit of outside credit with backpay. (*Ukiah, supra,* 201 Cal.App.3d at pp. 643–645.)

These precepts apply herein. Section 44924 renders void any portion of a collective bargaining agreement purporting to waive the benefits of the uniformity provisions of section 45028. (See *California Teachers' Assn. v. Parlier Unified School Dist.* (1984) 157 Cal.App.3d 174, 183 & fn. 6 [204 Cal.Rptr. 20]; *Winslow v. San Diego Community College Dist.* (1979) 97 Cal.App.3d 30, 38–39 [158 Cal.Rptr. 509].) As noted, while the agreement to institute a compressed salary schedule did not run afoul of section 45028, the reassignment of teachers contemplated in Attachment B did. The court's judgment enforced the valid provision of paragraph 4 of the collective bargaining agreement (i.e., compressing and renumbering the salary schedule), while severing the invalid part (reassigning certain teachers to step levels below their years of experience). This procedure did not result in "unbargained for" relief any more than did the relief granted in *Ukiah* or *United Teachers—L.A.*

We are unimpressed by the District's complaint that the effect of the writ will be to grant the petitioning teachers an enhanced salary "for which they did not bargain." As the trial court observed, the District must be charged with presumptive knowledge of both section 45028 and the nonwaivability provisions of section 44924. The court properly enforced the revised schedule that both parties bargained for, minus a provision for step-level reassignment that violated the uniformity mandate of section 45028. The writ cured the uniformity violation while preserving a compressed schedule that was both lawful and bargained for.

*Conclusion*

The District's reassignment of teachers to step levels below their years of experience in pursuit of the collective bargaining agreement's "compressed" schedule created a uniformity violation under section 45028. No uniformity exception applied, since the only criteria upon which the schedule operated were years of experience and training. The trial court properly enforced the collective bargaining agreement by deleting a void portion of it and directing that *all* teachers benefit from the compression. Finally, the affected teachers were entitled to have their step levels readjusted so that the new schedule compensated them uniformly according to experience and training.

## DISPOSITION

The judgment is affirmed. The Teachers' request for judicial notice is dismissed as moot. The Teachers shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Sims, Acting P. J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 13, 2008, S164746.

# APPENDIX

APPENDIX

# BEFORE

| Table A: Prior Uncompressed Salary Schedule | | | | | | |
|------|---------|---------|---------|---------|---------|---------|
| Step | Class A | Class B | Class C | Class D | Class E | Class F |
| 12 | 40,145 | 42,935 | 46,003 | 49,976 | 53,393 | 56,795 |
| 13 | 40,145 | 42,935 | 46,003 | 49,976 | 53,393 | 56,795 |
| 14 | 40,145 | 42,935 | 46,003 | 49,976 | 53,393 | 56,795 |
| 15 | 40,145 | 42,935 | 46,003 | 49,976 | 54,090 | 57,491 |
| 16 | 40,145 | 42,935 | 46,003 | 49,976 | 54,090 | 57,491 |
| 17 | 40,145 | 42,935 | 46,003 | 49,976 | 54,090 | 57,491 |
| 18 | 40,145 | 42,935 | 46,003 | 51,371 | 54,786 | 58, 188 |
| 19 | 40,145 | 42,935 | 46,003 | 51,371 | 54,786 | 58, 188 |
| 20 | 40,145 | 42,935 | 46,003 | 51,371 | 54,786 | 58, 188 |
| 21 | 41, 539 | 44,329 | 47,397 | 52,067 | 55,483 | 58,885 |
| 22 | 41, 539 | 44,329 | 47,397 | 52,067 | 55,483 | 58,885 |
| 23 | 41,539 | 44,329 | 47,397 | 52,067 | 55,483 | 58,885 |
| 24 | 42,933 | 45,723 | 48,791 | 52,764 | 56,179 | 59,581 |
| 25 | | | | | 56,179 | 59,581 |
| 26 | | | | | 56,179 | 59,581 |
| 27 | | | | | 56,884 | 60,286 |

(Source of illustrative table is at JA 233 )

Once teachers in the first four classes (A, B, C and D) reached step 24, they were no longer eligible for step raises.

i

# AFTER

| Step | Class A | Class B | Class C | Class D | Class E | Class F |
|------|---------|---------|---------|---------|---------|---------|
| **Table B: New Compressed Salary Schedule** | | | | | | |
| 12 | 44,160 | 47,229 | 50,603 | 54,974 | 58,732 | 62,475 |
| 13 | 44,160 | 47,229 | 50,603 | 54,974 | 58,732 | 62,475 |
| 14 | 44,160 | 47,229 | 50,603 | 54,974 | 58,732 | 62,475 |
| 15 | 44,160 | 47,229 | 50,603 | 54,974 | 59,499 | 63,240 |
| 16 | 44,160 | 47,229 | 50,603 | 54,974 | 59,499 | 63,240 |
| 17 * | 44,160 | 47,229 | 50,603 | 56,508 | 60,265 | 64,007 |
| 18 | 45,693 | 48,762 | 52,137 | 57,274 | 61,031 | 64,774 |
| 19 | 45,693 | 48,762 | 52,137 | 57,274 | 61,031 | 64,774 |
| 20 | 45,693 | 48,762 | 52,137 | 57,274 | 61,031 | 64,774 |
| 21 | 47,226 | 50,295 | 53,670 | 58,040 | 61,797 | 65,539 |
| 22 | | | | | 61,797 | 65,539 |
| 23 | | | | | 61,797 | 65,539 |
| 24 | | | | | 62,572 | 68,003 |

(Source of illustrative table is at JA 235)

The new salary schedule eliminated steps 17, 18 and 19 and renumbered steps 18-27. Teachers at steps 18-27 in the academic year 2000-2001 were assigned new step numbers which no longer corresponded to their years of experience.

---

*Step 17 includes all teachers who were formerly in steps 17, 18, 19 and 20.

ii

# EFFECTS OF THE DISTRICT'S
# COMPRESSED STEP SCHEDULE

| TABLE C | | | | TABLE D | | | | TABLE E | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Teacher "X"—Class F (with 16 years of experience) | | | | Teacher "Y"—Class F (with 19 years of experience) | | | | Teacher "Z"—Class F (with 21 years of experience) | | | |
| Salary | Years Exp. | Step No. | Step Raise | Salary | Years Exp. | Step No. | Step Raise | Salary | Years Exp. | Step No. | Step Raise |
| 63,240 | 16 | 16 | | | | | | | | | |
| 64,007 | 17 | 17 | * | 64,007 | 19 | 17 | | | | | |
| 64,774 | 18 | 18 | * | 64,774 | 20 | 18 | * | 64,774 | 21 | 18 | * |
| 64,774 | 19 | 19 | | 64,774 | 21 | 19 | | 64,774 | 22 | 19 | |
| 64,774 | 20 | 20 | | 64,774 | 22 | 20 | | 64,774 | 23 | 20 | |
| 65,539 | 21 | 21 | * | 65,539 | 23 | 21 | * | 65,539 | 24 | 21 | * |
| 65,539 | 22 | 22 | | 65,539 | 24 | 22 | | 65,539 | 25 | 22 | |
| 65,539 | 23 | 23 | | 65,539 | 25 | 23 | | 65,539 | 26 | 23 | |
| 68,003 | 24 | 24 | * | 68,003 | 26 | 24 | * | 68,003 | 27 | 24 | * |

*Boldface indicates step increase in salary. *Boldface indicates step increase in salary. *Boldface indicates step increase in salary.

Tables C, D and E show a hypothetical advancement up the salary scale of three teachers with the same level of training (class F) under the compressed step system, as formulated by the District for the 2000-2001 academic year. No step increases are available after step 24 is reached.