Filed 6/28/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

|  |  |
|---|---|
| SUSAN GEORGE, | C098772 |
| Plaintiff and Appellant, | (Super. Ct. No. 2022-CV0076408) |
| v. | |
| SUSANVILLE ELEMENTARY SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Lassen County, Leonard J. LaCasse, Judge. (Retired judge of the Mendocino Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed with directions.

Langenkamp, Curtis, Price, Lindstrom & Chevedden and Eric Lindstrom for Plaintiff and Appellant.

Maire & Deedon, Patrick L. Deedon and Sonja M. Dahl for Defendant and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Mark R. Bresee, Alyssa Ruiz de Esparza, Juliana Duran; Kristin Lindgren, Bode Owoyele and Dana Scott for California School Boards Association and its Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent.

Plaintiff Susan George taught for the Susanville Elementary School District (District) for several years before resigning to teach at another school district. She later returned to the District. When deciding George's placement on the salary schedule upon her return, the District did not credit her for the years of experience she gained at the other school district following her resignation. George filed a petition for writ of mandate arguing the District violated the uniformity requirement of Education Code[1] section 45028 (uniformity requirement) and independently violated the restoration requirement of section 44931 (restoration requirement) when placing her on the salary schedule without accounting for the years of experience she gained while outside the District after her resignation.

The trial court disagreed, finding the District complied with the Education Code. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The District compensates teachers pursuant to a salary schedule that classifies them at steps, i.e., rows, according to their years of experience, and columns, according to years of training. Where the steps and columns intersect is a teacher's placement on the salary schedule. The District and the union representing teachers working in the District entered a collective bargaining agreement providing, relevant to the District's salary schedule, that "[n]ew unit members that have no experience shall be placed . . . at [s]tep 1" and that "[n]ew unit members with experience shall . . . receive one year of credit for each year of experience up to a maximum of 12 years and maximum placement on [s]tep 13." The collective bargaining agreement does not contain a directive for placing unit members who are not considered new unit members on the salary schedule.

---

[1] Further undesignated section references are to the Education Code.

2

As for advancing on the schedule, the collective bargaining agreement provided that "a unit member must teach one year to advance one step on the salary schedule."

George worked outside of the District for the first five years of her career. She then taught for the District for seven years. While at the District, George achieved permanent, i.e., tenure, status. When George left her employment with the District, she had worked for a year at step 12 on the District's salary schedule. After resigning from the District, George worked two years outside of the District. George was rehired by the District within 39 months of resigning. When she returned to teach for the District, George had completed 14 years of teaching experience. While the District rehired George as a permanent teacher, it placed her at step 13 on the salary schedule, which did not account for the two years of experience she gained while outside of the District.

George filed a verified petition for writ of mandate, requesting the trial court order the District to place her at step 15 on the salary schedule. She argued that the District violated the uniformity requirement and the restoration requirement of the Education Code by denying her placement at step 15. The District argued it complied with the Education Code.

The trial court found the collective bargaining agreement prevented George from acquiring credit for the two years she worked for another school district. The trial court further found the uniformity requirement did not afford George relief and the District complied with the restoration requirement by restoring George to her prior position. Accordingly, the trial court denied George's petition for writ of mandate.

George appeals.

DISCUSSION

For a writ of mandate to issue under Code of Civil Procedure section 1085, George "must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists [citation]; (2) ' "a clear, present . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present and beneficial right in the petitioner to the performance

3

of that duty." ' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339-340.) "A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act." (*Id*. at p. 340.)

The parties acknowledge the District's salary schedule is based solely on years of experience and years of training, and that the collective bargaining agreement does not contain a different measure for placement on the salary schedule. George does not argue that her placement on the salary schedule is prohibited by the collective bargaining agreement. Instead, she argues the District's failure to credit her with the two years of experience she acquired outside the District violated the restoration requirement and the uniformity requirement of the Education Code. Consequently, our task is one of statutory construction.

"Where the facts are undisputed, an appellate court reviews issues of statutory interpretation de novo. [Citation.] . . . ' "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." ' " (*Adair v. Stockton Unified School Dist*. (2008) 162 Cal.App.4th 1436, 1442 (*Adair*).)

I

*George Has Not Established A Violation Of The Restoration Requirement*

The restoration requirement provides that "[w]henever any certificated employee of any school district who, at the time of his or her resignation, was classified as permanent, is reemployed within 39 months after his or her last day of paid service, the

4

governing board of the district shall, disregarding the break in service, classify him or her as, and restore to him or her all of the rights, benefits and burdens of, a permanent employee, except as otherwise provided in this code." (§ 44931.)

In *Dixon*, the appellate court held that the restoration requirement applies to a returning teacher's placement on the salary schedule. (*Dixon v. Board of Trustees* (1989) 216 Cal.App.3d 1269, 1281, 1285-1286.) There, a permanent teacher who had achieved the highest step, step 12, on the salary schedule resigned. (*Id*. at p. 1273.) The teacher was rehired less than 39 months later but placed at step 6 on the salary schedule. (*Id*. at pp. 1273-1274.) The trial court found, and the appellate court affirmed, the school district was required to restore the teacher to the highest step on the salary schedule. (*Id*. at pp. 1281, 1285-1286.) The *Dixon* court did not address whether the uniformity requirement permitted or prohibited the school district's placement of the teacher at step 6 and instead held the restoration requirement required school districts to restore permanent status to a teacher, as well as the teacher's retirement benefits and placement on the salary schedule. (*Dixon*, at pp. 1285-1286 & fn. 26.)

In light of this holding, George argues the restoration requirement, by its very terms, requires the District to place her at step 15 on the salary schedule because the provision mandates the District reinstate all of her rights, including classification on the salary schedule, "*disregarding her break in service*." (Italics added, boldface, underlining, & capitalization omitted.) We disagree.

*Dixon* did not interpret the restoration requirement in the way George advances. The *Dixon* court held the restoration requirement required a school district to restore a teacher to the salary schedule at the step previously held, in addition to restoring the teacher's retirement benefits as previously held during employment. (*Dixon v. Board of Trustees*, *supra*, 216 Cal.App.3d at pp. 1281, 1285-1286.) The *Dixon* court acknowledged this interpretation of the restoration requirement was consistent with the Attorney General's interpretation that teachers returning to a school district within 39

5

months were "entitled to restoration of the unused sick leave [they] accumulated *prior* to [their] resignation." (*Dixon*, at p. 1286, fn. 25, italics added.) The *Dixon* court did not hold the school district had to calculate a returning teacher's experience or benefits considering circumstances occurring after resignation.

Indeed, the language of the statute supports the District's argument that the restoration requirement requires it to *restore* George to the status she had achieved at the time of her resignation. It is clear that the term restore is integral to the meaning of the restoration requirement. " '[T]he parties have not directed us to any constitutional or statutory definitions for the term [restore,] and we are aware of none based on our own research.' [Citation.] 'In the absence of such definitions, we presume the words were intended to be understood " 'in [their] ordinary sense and, consequently, we may refer to [those words'] dictionary definition[s] to ascertain [their] ordinary, usual meaning.' " ' " (*In re Bailey* (2022) 76 Cal.App.5th 837, 847.)

Dictionaries define restore to mean "give back, return" or "to bring back to or put back into a former or original state: renew" (Meriam-Webster's Dict. (11th college ed. 2003) p. 1063, col. 1, capitalization omitted) and "[t]o bring back into existence or use; re-establish" or "[t]o put (someone) back into a prior position" (American Heritage Dict. (2d college ed. 1982) p. 1054, col. 1). Collectively, these definitions support the *Dixon* court's interpretation of restore to mean a school district must provide the benefit or right forfeited upon resignation, which is limited to that which was previously held.[2] Because

---

[2]     An argument can be made that *Dixon* is incorrect in applying the restoration requirement to a teacher's placement on the salary schedule. The language of the statute is specific to restoration of permanent status and the rights, benefits, and burdens of a permanent employee. (§ 44931.) But a teacher's placement on the salary schedule, i.e. seniority, and a teacher's classification, e.g., permanent/tenure or probationary, are distinct concepts. (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1293, fn. 20.) " 'Tenure has been stated to be a relation between the teacher and the school district, guaranteeing job security to the

the District restored George to at least her prior placement on the salary schedule, George has not established a violation of the restoration requirement.

## II

*George's Placement At Step 13 Violated The Uniformity Requirement*

George contends the District violated the uniformity requirement by failing to place her at step 15 of the District's salary schedule. We agree.

The uniformity requirement provides that "each person employed by a school district in a position requiring certification qualifications, except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." (§ 45028, subd. (a)(1).) "[The uniformity requirement] mandates that, when teacher salary schedules operate on the basis of education and experience, they must be wholly uniform. [Citation.] 'Uniform' means '[c]onforming to one principle, standard, or rule; consistent' with or '[b]eing the same as or consonant with another or others.' [Citation.] A 'uniform' salary schedule means that teachers will be compensated invariably according to their seniority and education. Such a rule forbids disparate

---

teacher, whereas seniority is basically a relation between teachers *inter se*, guaranteeing various privileges, including but not limited to, job security to the "elder statesman." ' " (*Ibid.*, italics added.) A permanent employee is not entitled to any placement on the salary schedule by virtue of being a permanent employee. Placement on a salary schedule that is based purely on experience and training, like the one here and in *Dixon* (*Dixon v. Board of Trustees*, *supra*, 216 Cal.App.3d at p. 1273, fn. 1), is determined by the uniformity requirement, unless contracted around in a collective bargaining agreement under the Government Code (*Adair*, *supra*, 162 Cal.App.4th at pp. 1442-1444, 1448-1449). Under the restoration requirement, however, the permanent employee is entitled to restoration of rights and burdens of permanent employment contained in the relevant collective bargaining agreement. Thus, while the restoration requirement of section 44931 could be read to apply only to restoring permanent status, and related benefits, and not to salary schedule placement, it does not make a difference because the collective bargaining agreement may always have a salary schedule under the uniformity requirement or under the exception contained in the Government Code.

7

treatment of groups of teachers with the same level of training and years of experience." (*Adair*, *supra*, 162 Cal.App.4th at p. 1444, italics omitted.)

A

*The Uniformity Requirement Applies To Restored Teachers*

The District contends the uniformity requirement is inapplicable to George's placement on the salary schedule because the restoration requirement controls the placement of teachers rehired within 39 months. We disagree.

By the statute's terms, the uniformity requirement applies to "each person employed by a school district in a position requiring certification qualifications." (§ 45028, subd. (a)(1).) The subdivision contains two exceptions—when the position the employee is hired to fill requires administrative or supervisory credentials. (*Ibid.*) Subdivision (a)(3) contains further exceptions, including "teachers of special day and evening classes in elementary schools, teachers of special classes for elementary pupils, teachers of special day and evening high school classes and substitute teachers." (§ 45028, subd. (a)(3).) The uniformity requirement does not include an exception for teachers restored pursuant to the restoration requirement, indicating the Legislature did not intend for such an exception to exist. (See *Barron v. Superior Court* (2023) 90 Cal.App.5th 628, 638 ["Under the interpretive canon *expressio unius est exclusio alterius*, 'the explicit mention of some things in a text may imply other matters not similarly addressed are excluded' "]; see also *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1265 [" 'Courts may not read into a statute an exception not incorporated therein by the Legislature' "].)

Still, the District argues the existence of the restoration requirement acts to provide an exception to the uniformity requirement. Again, we disagree. There is nothing in the language of the restoration requirement to indicate the Legislature intended it to govern *exclusively* over the placement on the salary schedule of teachers returning to district service within 39 months of resignation. The language of the restoration

8

requirement does not contradict the language of the uniformity requirement and the provisions can be read in harmony. (See *First Student Cases* (2018) 5 Cal.5th 1026, 1035 [" 'We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components' "].) Read together, the provisions require a school district to restore a teacher to permanent status and to place that teacher on the salary schedule in a manner uniform to all other teachers in the school district. Such an interpretation upholds the purpose of the uniformity requirement to mandate a wholly uniform system of seniority and forbid disparate treatment of groups of teachers with the same level of training and years of experience. (*Adair*, *supra*, 162 Cal.App.4th at p. 1444.)

This is further confirmed by the language of the restoration requirement deferring to other provisions of the Education Code when in conflict—"the governing board of the district shall . . . restore to [a teacher] all of the rights, benefits and burdens of, a permanent employee, *except as otherwise provided in this code*." (§ 44931, italics added; see *San Jose Teachers Assn. v. Allen* (1983) 144 Cal.App.3d 627, 641 ["The 'except as otherwise provided in this code' provision in [the restoration requirement] must be read as deferring to section 44848," which calculates an employee's date of employment].) The Education Code mandates uniform treatment of each person employed by a school district when salary schedules are based on years of experience and years of training. (§ 45028, subd. (a)(1).) Thus, the restoration requirement must be read as deferring to the uniformity requirement.

B

*George Was Not Treated Uniformly To All Other Teachers Hired By The District*

The District argues it was not required to count the out-of-district experience George gained after her resignation from the District because she is a returning teacher and the collective bargaining agreement does not permit the crediting of out-of-district experience once a teacher has already been a member of the union. The District and

9

amicus curiae California School Boards Association focus much on the fact the parties' relationship is governed by a collective bargaining agreement. Uniformity can be waived, however, only through the setting of a salary schedule pursuant to Government Code section 3543.2, subdivisions (d) through (e), which permits a salary schedule based on factors other than experience and training. (*Adair*, *supra*, 162 Cal.App.4th at pp. 1442-1444, 1448-1449.) The District does not argue it and the union representing teachers in the District entered into an agreement pursuant to Government Code section 3543.2, and further the District's salary schedule is not based on anything other than experience and training. Thus, the fact the parties are subject to a collective bargaining agreement is of no relevance to whether the District's application of the collective bargaining agreement violates the Education Code.

Without the collective bargaining agreement as a shield, the District argues it was not required to credit the out-of-district experience George earned after her resignation because it uniformly does not recognize out-of-district experience of any rehired teacher, except to the extent the restoration requirement requires it to.

The Education Code permits school districts to impose limitations on the crediting of experience, as long as the limitations are uniformly applied. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 660-661 & fn. 6 (*Palos Verdes*).) In *Palos Verdes*, our Supreme Court held that "certified employees not occupying administrative or supervisory positions are to be classified for salary purposes strictly according to years of training and experience up to the applicable maximum . . . and that the principle of 'reasonable classification[,]' [which left classification to the reasonable discretion of the district,] may no longer be employed in justification of variations from such uniform treatment on the basis of considerations such as '[stabilizing] continuity of service,' 'attracting new teachers' [citation], or 'policy changes necessitated by employment needs.' " (*Id*. at p. 662.) Thus, under the uniformity requirement, a school district is not required to recognize private school

10

teaching experience. But once it does, it must recognize the private school teaching experience of all teachers working in the school district, even if those teachers are already employed by the school district. (*Palos Verdes*, at pp. 654-655, 665.)

In so holding, our Supreme Court recounted the facts of *Lawe v. El Monte School Dist.* (1968) 267 Cal.App.2d 20 (*Lawe*), where the school district's placement of a teacher was permitted under the prior version of the Education Code allowing for reasonable placement of teachers on the salary schedule. (*Palos Verdes*, *supra*, 21 Cal.3d at pp. 656-657.) In *Lawe*, "the plaintiff, a permanent certified teacher, had been employed by the district for five consecutive years when he was granted a one year leave of absence to enable him to teach in an American Dependants Education Group School in Germany for the United States Department of Defense. Apparently during the period of his absence[,] the district adopted a policy of allowing salary credit for outside experience only for the purpose of advancing a teacher as high as the fourth step in the salary scale, a step which [the plaintiff] had already achieved prior to his leave of absence. Thus[,] while two other teachers who had not reached the fourth step prior to taking leaves of absence for outside teaching were granted credit for the time thus spent, [the] plaintiff was not." (*Palos Verdes*, at pp. 656-657 [summarizing *Lawe*].)

Our Supreme Court indicated the school district's failure to recognize the year of out-of-district experience for the plaintiff in *Lawe* violated the uniformity requirement stating that "[a] rule providing for outside experience credit up to five years may indeed have the effect of 'depriving' a teacher having six years outside experience of a year of credit. This, however, is a 'uniform allowance . . . for . . . years of experience' within the meaning of [former] section [45028], for under it all teachers receive credit for prior experience up to the stated maximum. In the situation exemplified in *Lawe*, on the other hand, a teacher is precluded from receiving credit for a year of outside experience within the allowed maximum solely due to his seniority within the system. This, in our view,

11

does not provide a 'uniform allowance . . . for . . . years of experience.' " (*Palos Verdes*, *supra*, 21 Cal.3d at p. 661, fn. 6.)

Turning to the facts of this case, the District permits newly hired teachers a maximum of 12 years of prior experience, which necessarily means it permits teachers a maximum of 12 years of out-of-district experience. Similarly, in *Lawe*, the collective bargaining agreement provided, " 'A maximum of four years prior experience may be allowed for either teaching or military service.' " (*Lawe*, *supra*, 267 Cal.App.2d at p. 22.) That collective bargaining agreement, much like the one here, did not distinguish between out-of-district experience and in-district experience, but by virtue of awarding a maximum of four years of prior teaching experience, the school district permitted a maximum of four years of out-of-district teaching experience. (*Ibid.*; *Palos Verdes*, *supra*, 21 Cal.3d at pp. 656-657, 661, fn. 6.) Accordingly, under the reasoning of *Palos Verdes*, the District was not permitted to deny George this same credit merely because she already achieved the 12-year maximum of prior experience. (See *Palos Verdes*, at p. 661, fn. 6.)

The District seeks to distinguish this case from *Lawe* as described in *Palos Verdes* by arguing it did not deny George the out-of-district experience because of her seniority but because she was a rehired teacher. It attempts to explain this limitation on rehired teachers as a decision to define the type of experience the District wishes to credit. But, the District has decided to credit out-of-district experience and up to 12 years of it. Its policy of crediting this experience to only newly hired teachers results in crediting based on the type of teacher who earned the experience, not the type of experience earned. This is not allowed under the uniformity requirement, which mandates a wholly uniform system of seniority and "forbids disparate treatment of groups of teachers with the same level of training and years of experience." (*Adair*, *supra*, 162 Cal.App.4th at p. 1444.) Because the District recognizes out-of-district experience for some teachers, it must recognize it for all teachers. (See *Palos Verdes*, *supra*, 21 Cal.3d at pp. 654, 660-661.)

12

This includes rehired teachers.  The uniformity requirement prohibits disparate treatment based on considerations such as " '[stabilizing] continuity of service' " (*Palos Verdes*, at p. 662), which is the result if placement on the salary schedule is partially based on whether a teacher was previously employed by a school district.

In sum, the District must credit George with up to 12 years of out-of-district experience.[3]

---

[3]     Amicus curiae California School Boards Association points to section 45028, subdivision (b)(1) as authorization for a school district to treat some teachers disparately within a school district.  The provision provides, "It is not a violation of the uniformity requirement of this section for a school district . . . to grant any employee hired after a locally specified date differential credit for prior years of experience . . . for purposes of initial placement on the salary schedule of the district."  (*Ibid*.)  The District, however, does not rely on this subdivision to justify its disparate treatment of rehired teachers, nor do we see its applicability.  The collective bargaining agreement does not specify a date to justify disparate treatment of prior experience among teachers.  Instead, it imposes a single rule for the crediting of prior experience.

## DISPOSITION

The judgment denying the writ of mandate is reversed and the matter remanded with directions to issue a writ compelling the District to place George on its salary schedule in compliance with Education Code section 45028 as construed herein, with appropriate back pay and benefits.  The District shall pay costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

/s/_____
ROBIE, J.

We concur:

/s/_____
HULL, Acting P. J.

/s/_____
MAURO, J.

14