[No. F035738. Fifth Dist. Jan. 11, 2002.]

CALIFORNIA TEACHERS ASSOCIATION et al., Plaintiffs and Respondents, v.
GOVERNING BOARD OF THE HILMAR UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

## COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Chesley D. Quaide and Janice J. Hein for Defendants and Appellants.

Tuttle & McCloskey, Ernest H. Tuttle and Kay M. Tuttle for Plaintiffs and Respondents.

## OPINION

**LEVY, J.**—The Governing Board of the Hilmar Unified School District and the Hilmar Unified School District (collectively the District) appeal from a judgment granting a peremptory writ of mandate directing the District to pay eight teachers who resigned or left their employment at the end of the 1997-1998 school year an additional one-time payment of 3 percent of base salary. A one-time payment of 3 percent of base salary had been paid by the District to teachers who returned to work for the 1998-1999 school year or retired after the 1997-1998 school year. The payment was not made to teachers who resigned or left after the 1997-1998 school year. The payment determinations by the District were made in accordance with the express terms of a mediated settlement package reached with the teachers' union in

September 1998. The trial court held the exclusion of the eight teachers violated the uniform pay provisions of Education Code section 45028[1] and granted the writ of mandate.

We hold that where a one-time payment to teachers is based upon at least one criterion that is neither years of training nor years of experience, the provisions of subdivision (d) of Government Code section 3543.2 apply and, thus, section 45028 is not violated. Accordingly, we reverse.

## PROCEDURAL BACKGROUND

The California Teachers Association (CTA) and the Hilmar Teachers' Association (HTA) filed a petition for writ of mandate against the District on November 4, 1999, requesting payment of "the 3% retroactive pay to all teachers who worked during the 1997-1998 school year, including the eight teachers who left or resigned at the end of the school year." The District filed an opposition to the petition, along with declarations and points and authorities.

On April 4, 2000, a hearing was held at which counsel presented arguments based upon the declarations and exhibits filed with the court. No witnesses testified at the hearing. After the oral argument, the trial court issued its decision granting the writ. The judgment was filed and a peremptory writ of mandate was issued on May 1, 2000. The District filed its notice of appeal on June 12, 2000, seeking reversal of the trial court's judgment and entry of a judgment denying the petition for a writ of mandate.

## FACTS

The District, like many school districts throughout California, pays its teachers based on a salary schedule with columns for the number of college units taken above a college degree and with rows or "steps" for the number of years of teaching experience. The base salary of each teacher is set forth in the "cell" formed by the intersection on the salary schedule of the row, i.e., step, containing his or her number of years of teaching experience and the column containing the number of college units he or she has completed.

During contract negotiations for the 1997-1998 school year, the District and the HTA reached impasse and, in the fall of 1998, a mediator was appointed pursuant to Government Code section 3548 et seq. to assist the parties in reaching agreement. The District and the HTA reached a tentative

---

[1] All statutory references are to the Education Code unless otherwise indicated.

agreement on salary and other matters for the 1997-1998 and the 1998-1999 school years.[2]

The president of the HTA described the round of bargaining that led to the tentative agreement as long and difficult. The District initially proposed a one-time payment of 3 percent of base salary be made only to teachers who returned to work for the 1998-1999 school year. During the negotiations, the representative of the HTA (1) represented that the proposal was unacceptable unless the one-time payment also was paid to teachers who retired and (2) "expressly acknowledged that the [HTA] was not seeking to have this same payment made to [HTA] members who had otherwise left or resigned their employment with the District at the conclusion of the 1997-1998 school year."

The president of the HTA stated in her declaration that (1) the HTA "bargaining team . . . made it clear to all concerned, that any settlement . . . should provide retroactive pay to all persons who [taught] during the 1997-98 school year" and (2) the "bargaining team recommended the ratification of the settlement agreement based on our understanding and expressed intent, that all persons who were in the bargaining unit during the 1997-98 school year would receive the 3% retroactive pay." The declaration and rest of the record do not indicate whether "all concerned" included any representative of the District and, if so, how and when either the position concerning retroactive pay or the "understanding and expressed intent" of the bargaining team was communicated to a representative of the District.

The final language in the tentative agreement was the result of discussions between Ron Roberti, a CTA staff representative, and Attorney Paul Loya, the District's lead negotiator. The tentative agreement was ratified by the members of the HTA on September 17, 1998, and approved by the District on September 30, 1998. Paragraph 1 of the document titled "HILMAR UNIFIED SCHOOL DISTRICT AND HILMAR TEACHERS ASSOCIATION MEDIATED SETTLEMENT PACKAGE" provides: "The parties agree to a 6.15% salary schedule increase effective July 1, 1998 and an additional one-time payment of 3% of base salary (including STRS credit). The one-time payment of 3% of base salary shall be paid only to all current unit members who served in paid status during the 1997-1998 school year, including those employees who retired at the conclusion of the 1997-1998 school year. Extra duty schedules will be increased by 6.15% effective July 1, 1998 for stipends and upon ratification for hourly rates."

---

[2]The 1997-1998 school year ran from July 1, 1997, to June 30, 1998. Similarly, the 1998-1999 school year ran from July 1, 1998, to June 30, 1999. (§ 37200.)

Pursuant to the express terms of paragraph 1 of the mediated settlement package (hereafter Paragraph 1), the District made the additional payment of 3 percent of base salary to all certificated employees who had returned to work for the 1998-1999 school year or who had retired from work at the conclusion of the 1997-1998 school year. The 3 percent payment was not made to eight teachers who left employment with the District at the end of the 1997-1998 school year, but did not retire. The eight teachers worked the entire 1997-1998 school year for the District but were not "current unit members" in September 1998.

One of the eight teachers wrote to the District requesting the 3 percent additional pay. The District replied with a letter declining the request. Subsequently, a demand letter was sent to the District requesting the 3 percent payment be made to all teachers who were employed during the 1997-1998 school year. This demand was rejected by the District based on the language of Paragraph 1 conditioning payment on either continued employment or retirement.

The trial court ruled the uniform pay provisions of section 45028 were violated based on the findings that (1) the teachers had already performed their work for the 1997-1998 school year for their classification; (2) the payment was calculated after the completion of the 1997-1998 school year using the base salary in effect for that school year; (3) the payment was retroactive pay and not a bonus; and (4) the criteria used to determine eligibility for the payment, i.e., teachers who returned or retired versus teachers who left or resigned, was arbitrary and without a reasonable basis. This appeal ensued and raises the issue of whether the "additional one-time payment of 3% of base salary" (hereafter the Payment) violated section 45028.

## DISCUSSION

I. *The Mediated Settlement Package Unambiguously Excludes the Eight Teachers from Receiving the Payment.*

The first sentence in Paragraph 1 set forth the formula for the amount of the Payment, that is, "3% of base salary." The second sentence contained the conditions relating to eligibility for the Payment. A recipient was required to be a "current unit member[] who served in paid status during the 1997-1998 school year" or an "employee[] who retired at the conclusion of the 1997-1998 school year." ▮▮▮ Our first step is to provisionally examine all credible extrinsic evidence concerning the parties' intentions and determine if Paragraph 1 is "ambiguous," i.e., reasonably susceptible to more than one

interpretation. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166 [6 Cal.Rptr.2d 554].) The presence of ambiguity in an agreement is a question of law, not fact, which we determine de novo. (*Ibid.*) ██ ██ ██ Accordingly, in addressing whether Paragraph 1 is ambiguous, we review the declarations, with attachments, of the HTA's president,[3] the District's representative in negotiations, and others. ██ After this review, we conclude the first two sentences of Paragraph 1 are subject to only one reasonable interpretation—teachers who taught during the 1997-1998 school year but (1) were not "current unit members" at the time the mediated settlement package was approved or (2) did not retire after the 1997-1998 school year failed to satisfy the conditions imposed and, therefore, were not eligible to receive 3 percent of their base salary.[4]

## II. *The Payment Was Authorized Additional Compensation.*

We next consider whether or not contractually excluding the eight teachers from receiving the Payment was permissible under the relevant statutes. This issue requires the interpretation and application of section 45028 and Government Code section 3543.2, subdivisions (d) and (e), which govern teachers' salary schedules and "additional compensation." Section 45028, subdivision (a), provides in part: "Effective July 1, 1970, each person employed by a school district in a position requiring certification qualifications, except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the *salary schedule on the basis of uniform allowance for years of training and years of experience*, except if a public school employer and the exclusive representative negotiate and *mutually agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience* pursuant to Chapter 10.7 (commencing with Section 3540) of the Government Code. Employees shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such employees serve." (Italics added.)

---

[3] If the intent of the bargaining team as described by the HTA's president was not communicated to the District, then it is merely evidence of undisclosed subjective intent of a party and is irrelevant to determining the meaning of contractual language. (See *Winet v. Price, supra,* 4 Cal.App.4th at p. 1166, fn. 3; *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 970 [108 Cal.Rptr.2d 34].) Alternatively, if we infer the intent of the bargaining team was communicated to the District's representative and the communication was not superseded subsequently by the HTA's representative's acknowledgment that the payment was not being sought for teachers who left or resigned, the evidence of the intent of the bargaining team does not create an ambiguity in the plain language of Paragraph 1.

[4] As a result of this conclusion, we need not consider the second step described in *Winet v. Price, supra,* 4 Cal.App.4th at pages 1165-1166, i.e., interpreting ambiguous language of an agreement and the ancillary question of what proffered extrinsic evidence is competent for that purpose.

Subdivision (e) of Government Code section 3543.2 sets forth the following rules relating to salary schedules: "Pursuant to Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of either party, *meet and negotiate a salary schedule based on criteria other than a uniform allowance for years of training and years of experience.* If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code requiring a salary schedule based upon a uniform allowance for years of training and years of experience shall apply. A salary schedule established pursuant to this subdivision shall not result in the reduction of the salary of any teacher." (Italics added.)

Subdivision (d) of Government Code section 3543.2 allows "additional compensation" to be paid to teachers under certain circumstances: "Notwithstanding Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon request of either party, *meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience.* If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code shall apply." (Italics added.)

The District contends the Payment was authorized by the exception to the salary uniformity requirements, which permits a school district and teacher's union to "agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience." (§ 45028, subd. (a).) The HTA argues that the Payment was not "salary" or part of a "salary schedule." Alternatively, the District asserts the theory that the Payment was "additional compensation" permitted by subdivision (d) of Government Code section 3543.2. The HTA contends that if the Payment is considered "additional compensation," it is not saved by the provisions of Government Code section 3543.2, subdivision (d), because it is not based solely on criteria other than years of training and years of experience. To determine which statutory provisions apply to the Payment, this court must decide whether the Payment is "salary" within the meaning of section 45028 or "additional compensation" under Government Code section 3543.2, subdivision (d).

A. *Standard of Review.*

The standards applicable to appellate review of a trial court's interpretation of a statute are well established. ■ Appellate courts review statutory interpretations de novo. (*Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143 [64 Cal.Rptr.2d 527].)

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; *Santa Ana Unified School Dist. v. Orange County Development Agency* (2001) 90 Cal.App.4th 404, 408-409 [108 Cal.Rptr.2d 770].)

B. *Historical Background.*[5]

In the 1960's, section 45028 (then § 13506) empowered school boards to adopt a salary schedule provided it was not arbitrary, discriminatory, or unreasonable and, if an allowance for years of training and years of experience was used, it was required to be uniform and based upon reasonable classifications. (See *Shoban v. Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].) In 1969 the Legislature amended section 45028 (then § 13506) and greatly reduced the flexibility of school districts in fixing compensation of teachers. The amendment mandated that teachers be classified for salary purposes and required that the classification "proceed *wholly* on a uniform basis of years of training and years of experience." (Italics in original.) (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 661 [147 Cal.Rptr. 359, 580 P.2d 1155].) As amended, section 45028 was interpreted to mean "that years of education and years of experience . . . were the only criteria that could be used in setting teachers' salaries." (*Livingston, supra,* 219 Cal.App.3d at p. 1522.)

In 1983, the Legislature added subdivision (d) to Government Code section 3543.2 (Stats. 1983, ch. 498, § 128, pp. 2144-2145) thereby "loosening the interpretation given section 45028 and allowing the parties to reach agreement [for additional compensation] on criteria that are separate

---

[5]In *California Teachers' Assn. v. Livingston Union School Dist.* (1990) 219 Cal.App.3d 1503, 1520-1524 [269 Cal.Rptr. 160] (*Livingston*), this court discussed the history of section 45028 and subdivision (d) of Government Code section 3543.2. Here, we briefly review the historical development of those provisions and discuss the changes implemented by legislation enacted in 1996.

from years of training and years of experience." (*Livingston, supra,* 219 Cal.App.3d at p. 1522.)

In 1996, the uniform salary requirements of section 45028 were loosened further by the enactment of Senate Bill No. 98 (1995-1996 Reg. Sess.). The law existing prior to the enactment of Senate Bill No. 98 was described in an analysis of the Senate Committee on Education considering Assembly Bill No. 3039 (1995-1996 Reg. Sess.):[6]

"Current law requires that teachers be compensated on the basis of a salary schedule with uniform allowances for years of training (generally, post-baccalaureate coursework) and years of experience.

"In 1983, the Legislature authorized school districts and teachers to collectively bargain additional compensation based on criteria other than years of training and years of experience. However, a series of court decisions have determined that current law does not permit collective bargaining agreements to supersede the uniform salary schedule requirement in any other manner (see attached Legislative Counsel opinion)." (Sen. Com. on Education, Analysis of Assem. Bill No. 3039 (1995-1996 Reg. Sess.) Aug. 12, 1996, p. 1.)[7]

Senate Bill No. 98 amended section 45028 by allowing a school district and a teacher's union to "agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience." (§ 45028, subd. (a).) ▮▮▮ ▬▬▮ The Legislative Counsel's Digest indicates the exception added to section 45028, together with the addition of Government Code section 3543.2, subdivision (e), changed then existing law by requiring "a public school employer and the exclusive representative, upon the request of either party, to negotiate and mutually agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience." (Legis. Counsel's Dig., Sen. Bill No. 98 (1995-1996 Reg. Sess.) Stats. 1996, ch. 959.)[8]

We are not aware of any published decisions that have (1) analyzed subdivision (a) of section 45028 or subdivision (e) of Government Code

---

[6]Most of the language in Senate Bill No. 98 came from the provisions in Assembly Bill No. 3039, as amended August 8, 1996.

[7]The committee's analysis is available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_3001-3050/ab_3039_cfa_960808_140329_sen_comm.html> (as of Jan. 11, 2002).

[8]Legislative Counsel's Digests are relevant to statutory interpretation. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 661 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

section 3543.2 since the 1996 enactment of Senate Bill No. 98; (2) decided, since the July 28, 1983, effective date of subdivision (d) of Government Code section 3543.2, whether or not a one-time payment to teachers was "additional compensation" or "salary"; or (3) addressed the appropriate test for distinguishing between "salary" under section 45028 and "additional compensation" under subdivision (d) of Government Code section 3543.2.

One group of pre-1996 cases addresses section 45028 and discusses the concepts of "additional compensation" and "other criteria" contained in subdivision (d) of Government Code section 3543.2. (See *San Francisco Classroom Teachers Assn. v. San Francisco Unified School Dist.* (1987) 196 Cal.App.3d 627 [242 Cal.Rptr. 352] (*San Francisco*) ["career increment" available only after a teacher had completed three years at the maximum salary rating violated § 45028]; *Livingston, supra,* 219 Cal.App.3d 1503 [Public Employment Relations Board did not have initial jurisdiction over a claim involving a "over one and up one" limitation on teacher's movement on the salary schedule]; *California Teachers Assn. v. Governing Board* (1991) 229 Cal.App.3d 695 [280 Cal.Rptr. 286] (*Lancaster*) [limiting training advancement to one level per year violated § 45028].) However, the facts of these cases involved features related to the salary schedule and did not concern a one-time payment. None of the cases held a particular type of remuneration constituted "additional compensation" within the meaning of Government Code section 3543.2, subdivision (d). Consequently, the dicta in these cases which discuss one-time payments provide only limited guidance in distinguishing "additional compensation" from "salary."

With respect to other authority addressing a one-time payment and what is "salary" as opposed to "additional compensation," an Attorney General opinion (69 Ops.Cal.Atty.Gen. 268 (1986)) considered whether an off-schedule, single-increment payment to teachers would conflict with section 45028. The opinion first concludes that a distribution based on a uniform allowance for years of training and years of experience would not violate section 45028. Next, the opinion concludes a negotiated sum in addition to the base salary schedule that is based upon criteria other than training and experience would be valid under subdivision (d) of Government Code section 3543.2. However, the opinion does not address the hybrid situation where the one-time payment is based upon at least one criterion that is neither years of training nor years of experience.

Notwithstanding the foregoing authority, the facts of this case present an issue of first impression.

## C. *Definitions of "Salary" and "Additional Compensation."*

 Because neither part 25 of title 2 of the Education Code[9] (see 69 Ops.Cal.Atty.Gen., *supra*, 268, 269, fn. 2) nor existing case law defines "salary" or "additional compensation," the intent of the Legislature in using those words will be determined, if possible, by attributing the "usual, ordinary, and commonsense meaning to them." (*Santa Ana Unified School Dist. v. Orange County Development Agency, supra*, 90 Cal.App.4th at p. 409.) "Salary" is defined as "fixed compensation paid regularly . . . for services." (Webster's 3d New Internat. Dict. (unabridged ed. 1986) p. 2003.) The one-time payment fails to meet this definition of salary because it was not directly "for services" and it was not "paid regularly." The Payment, while having some connection to services provided in the 1997-1998 school year, was not "for services" because it was explicitly conditioned on teachers returning to work or retiring. In addition, the Payment could not be considered part of the 1998-1999 salary schedule because it was paid to individuals who were not employed by the District during that school year, i.e., the teachers who retired after the 1997-1998 school year.

One of the definitions of "compensation" is "payment for value received or service rendered: REMUNERATION." (Webster's 3d New Internat. Dict., *supra*, p. 463.) The "additional one-time payment of 3% of base salary" clearly falls within the scope of this definition. It was "remuneration" and a "payment." As previously discussed, it was not directly "for services." Therefore, the Payment was "compensation" that did not fall within the definition of "salary." Also, the parties' specific use of the term "additional" indicates the Payment is not part of, but supplemental to, the base salaries set forth in the salary schedule. Accordingly, using the usual and ordinary meaning of the words, we conclude the Payment is "additional compensation" and not "salary" or part of a "salary schedule."

---

[9]In arguing the Payment was "additional compensation," the District urged use of the provisions set forth in section 22119.2, which define "creditable compensation." Section 22119.2 is contained in part 13 of title 1 of the Education Code, which pertains to the state teachers' retirement system. Section 22119.2 treats "salary" as distinct from "other remuneration" and money paid "in addition to salary." While using these definitions would lead to the same conclusion under the facts of this case as our analysis of the plain and ordinary meaning of the terms, we do not rely on these statutory definitions to support our conclusion because we found no support for the propositions that (1) the Legislature intended the definitions contained in part 13 to be used in the interpretation of section 45028 and Government Code section 3543.2 or (2) the use of those definitions is always consistent with legislative purposes underlying section 45028 and Government Code section 3543.2.

### D. *The Payment Was "Based Upon Criteria Other Than Years of Training and Years of Experience."*

The HTA argues that if the Payment is held to be "additional compensation" then it is not protected by subdivision (d) of Government Code section 3543.2 because it is not "based upon criteria other than years of training and years of experience." This argument is premised on the facts that (1) the amount each teacher received was a percentage of base salary and (2) base salary was determined exclusively by years of training and years of experience. From these premises, the HTA concludes that the Payment was based upon years of training and years of experience. In contrast, the District relies on the same statutory language—"based upon criteria other than years of training and years of experience"—to support its position that subdivision (d) of Government Code section 3543.2 explicitly authorized the Payment. The District contends the "other criteria" were the conditions requiring the teachers to (1) return to work after the 1997-1998 school year or (2) "retire[] . . . at the conclusion of the 1997-1998 school year."

These opposing interpretations of the "other criteria" prong of subdivision (d) of Government Code section 3543.2 squarely present the issues of (1) whether the statute is ambiguous and (2) if any ambiguity exists, what is the proper construction of the statute.

The express language of subdivision (d) of Government Code section 3543.2 authorizes "the payment of additional compensation based upon criteria other than years of training and years of experience." We conclude this provision is ambiguous because it is not clear whether the phrase "based upon criteria other than years of training and years of experience" means the permissible criteria (1) must exclude both training and experience or (2) must contain at least one factor besides training and experience.[10] To illustrate this ambiguity abstractly, if a statute requires a thing or act to be "based upon criteria other than A and B," it is clear that a set of criteria comprised of "C and D" would satisfy the qualifying language of the statute because both A and B are excluded from the set of criteria used. However, is the statutory language also satisfied when the set of criteria used is "A, B, C and D"? The set of "A, B, C and D" is different from, or not identical to, the set comprised of "A and B" and raises the question of whether the difference

---

[10]Another, more narrow, ambiguity arises because the qualifying language "based upon criteria other than years of training and years of experience" could modify (1) only the prepositional phrase "of additional compensation," (2) only the noun "payment," or (3) both. If the qualifying language modifies only the "payment," i.e., the act of paying, one could argue that it only imposes restrictions as to who is *eligible* for the additional funds and does not restrict the formula used to determine the *amount* paid to the teachers.

or lack of identity between the two sets causes the set of "A, B, C and D" to be criteria "other than A and B" within the meaning of the statute. The usual and ordinary meaning of the phrase "other than" does not reveal the legislative intent. One dictionary defines "other than" to mean "DIFFERENT, DISTINCT." (Webster's 3d New Internat. Dict., *supra*, p. 1598.) This definition does not clarify the meaning of the statute because it is possible that the permissible "criteria" need only be different or distinct in a set-to-set comparison rather than exclude both years of training and years of experience.

Because of the ambiguities in subdivision (d) of Government Code section 3543.2, we will construe its provisions to comport most closely with the apparent intent of the Legislature and to promote the general purpose of the statute. (See *Day v. City of Fontana, supra*, 25 Cal.4th at p. 272.) █ One ostensible objective or purpose of the teacher pay provisions adopted by the Legislature since 1983 is to increase the flexibility allowed school districts and teachers' unions in agreeing to the structure of pay through collective bargaining. In *Livingston*, this court recognized that part of this flexibility is provided by subdivision (d) of Government Code section 3543.2, which "allows 'additional compensation' to be paid based upon agreed criteria other than years of training and years of experience. . . . But, there must be some criteria other than training and experience to support disparate pay between teachers with like training and experience." (*Livingston, supra*, 219 Cal.App.3d at p. 1522.) This court further observed that the effect of subdivision (d) of Government Code section 3543.2 and the case law interpreting it[11] was that "teachers of equal training and experience must be paid the same unless there is some additional bargained-for factor pursuant to [Government Code] section 3543.2, subdivision (d) that creates a distinction." (*Livingston, supra*, 219 Cal.App.3d at p. 1523, fn. omitted.)

█ Consequently, we infer that the objectives of subdivision (d) of Government Code section 3543.2 are promoted by a construction that provides the most flexibility to school districts and teachers' unions in the

---

[11]The cases of *San Francisco, Livingston* and *Lancaster* did not identify, much less resolve, the ambiguity contained in subdivision (d) of Government Code section 3543.2. In *San Francisco*, the court held that a policy restricting access to a higher salary in a manner that resulted in teachers with the same experience and training receiving different salaries (1) violated section 45028 and (2) was not authorized under subdivision (d) of Government Code section 3543.2 because it "satisfie[d] neither the 'additional compensation' nor the 'other criteria' prong of Government Code section 3543.2, subdivision (d) . . . ." (*San Francisco, supra*, 196 Cal.App.3d at p. 635.) Because the holdings in *San Francisco, Livingston* and *Lancaster* all concern salary schedule modifications and not a one-time payment, the dicta in those cases discussing one-time payments is of little guidance except to the extent it concerns general matters such as the purpose or objective of the statute.

bargaining process while requiring one or more bargained-for factors to justify disparate pay between teachers of equal training and experience. In the present case, the disparity in pay between teachers of equal training and experience was based upon whether or not the teachers returned to work for the 1998-1999 school year or retired after the 1997-1998 school year. We conclude these conditions imposed on the Payment satisfied the requirement for "criteria other than years of training and years of experience" within the meaning of subdivision (d) of Government Code section 3543.2.

In summary, a one-time payment to teachers does not violate the uniform pay provisions of section 45028 or the legislative purposes underlying that section if at least one criterion upon which the payment is based is neither years of training nor years of experience. In this case, the conditions imposed upon the Payment satisfied the "other criteria" prong of Government Code section 3543.2, subdivision (d), and, as a result, section 45028 was not violated. Thus, the trial court erred in issuing the writ of mandate.

### DISPOSITION

The judgment is reversed. The trial court is directed to enter a judgment denying the petition for writ of mandate. Costs on appeal are awarded to appellants.

Buckley, Acting P. J., and Cornell, J., concurred.