182 Cal.App.4th 1424 (2010)
CALIFORNIA ATTORNEYS, ADMINISTRATIVE LAW JUDGES AND HEARING OFFICERS IN STATE EMPLOYMENT et al., Plaintiffs and Respondents,
v.
ARNOLD SCHWARZENEGGER, as Governor, etc., et al., Defendants and Appellants;
JOHN CHIANG, as Controller, etc., et al., Defendants and Respondents.
No. A125292.
Court of Appeals of California, First District, Division Three.
March 19, 2010.
*1428 Law Offices of Brooks Ellison and Patrick J. Whalen for Plaintiff and Respondent California Attorneys, Administrative Law Judges and Hearing Officers in State Employment.
Manatt, Phelps & Phillips, Ronald B. Turovsky and Becky S. Walker for Plaintiff and Respondent Jan Frank, as President of State Compensation Insurance Fund.
Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant; K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Will M. Yamada for Defendants and Appellants Arnold Schwarzenegger, as Governor of the State of California, and David Gilb, as Director of the Department of Personnel Administration.
Edmund G. Brown, Jr., Attorney General, Jonathan K. Renner, Assistant Attorney General, Zackery P. Morazzini and Ross C. Moody, Deputy Attorneys General, for Defendant and Respondent John Chiang, as California State Controller.

OPINION
POLLAK, J.
Defendants Arnold Schwarzenegger, in his capacity as the Governor of California, and David Gilb, in his capacity as the Director of the Department of Personnel Administration (DPA), appeal from an order and judgment granting a petition for writ of mandate prohibiting defendants from implementing furloughs for employees of the State Compensation Insurance Fund (SCIF). Defendants argue that the court erred in failing to stay this action under the doctrine of exclusive concurrent jurisdiction and, alternatively, that the court incorrectly determined that Insurance Code[1] section 11873 prohibits the Governor from furloughing SCIF employees. We shall affirm.

Factual and Procedural History
On December 19, 2008, the Governor issued Executive Order No. S-16-08. The order recites that the state is facing a fiscal and cash crisis and that the general fund deficit was projected to grow to $42 billion over the following 18 months. Finding that "a furlough will reduce current spending and immediately improve the State's ability to meet its obligations to pay for *1429 essential services . . .," the order directs the DPA to "adopt a plan to implement a furlough of represented state employees and supervisors for two days per month, regardless of funding source. This plan shall include a limited exemption process."
On January 5, 2009, the California Attorneys, Administrative Law Judges and Hearing Officers in State Employment (CASE) filed an action in the Sacramento County Superior Court against the Governor and the Director of the DPA seeking an injunction prohibiting the Governor from implementing the furloughs for state employees. (CASE I.) That petition alleges that "CASE is the exclusive collective bargaining representative of legal professionals in State Bargaining Unit 2 . . ., represent[ing] approximately 3400 legal professionals in more than 80 different state departments, boards, and commissions. Approximately 3240 members are attorneys, administrative law judges, and hearing officers who are exempt from the Fair Labor Standards Act (FLSA). All CASE members would be directly impacted if the executive order were to be implemented." The petition challenged the executive order on the grounds that the Governor lacks statutory authority to order a furlough, that salary setting is a legislative rather than an executive function, and that the furlough would contravene provisions of the Government Code and of the memoranda of understanding between the state and the unions. The petition prayed for an order directing the Governor "to set aside the portions of the Governor's Executive Order S-16-08 calling for a furlough and salary reduction for state employed legal professionals because the Executive Order is unlawful."
On January 30, the Sacramento County Superior Court denied the petition and applications in related cases that had been consolidated with it. Before judgment was entered, the chief counsel for the state Controller's Office wrote a letter to the court, asking it to clarify whether the January 30 ruling "is applicable to employees of independently elected constitutional officers and other elected state-wide officials, including the Lieutenant Governor, Office of the Attorney General, Secretary of State, State Treasurer, Superintendent of Public Instruction and Insurance Commissioner." On February 4, the court issued a minute order providing the requested clarification. The order explained that CASE I raised issues "regarding the Governor's authority to order furloughs of [CASE] members, as employees of executive branch agencies. The independently elected constitutional officers and other elected state-wide officials referenced above were not parties to these matters. The petitions and complaints upon which the court ruled did not raise any issues regarding the Governor's authority to order furloughs for the employees of those officers and officials. The court's ruling therefore did not address, or make any ruling regarding, the Governor's authority to order furloughs for the employees of those officers and officials. Accordingly, the court expresses no views regarding that issue."
*1430 On February 10, after DPA indicated that the furlough order would be applied to SCIF employees, CASE and individual plaintiffs Glen Grossman, Mark Henderson and Geoffrey Sims filed the present action in San Francisco Superior Court against the Governor, the Director of the DPA, John Chiang, as State Controller, and Jan Frank, as president of SCIF. The petition seeks an injunction prohibiting the Governor from imposing the furloughs on CASE members employed by SCIF on the ground that section 11873 prohibits the Governor from furloughing SCIF employees. On its own motion, the trial court asked the parties to brief whether the action should be stayed under the doctrine of exclusive concurrent jurisdiction until CASE I was finally resolved. Following briefing and additional argument on the issue, the court concluded that a stay was not required, based on the Sacramento court's February 4 minute order. On the merits, the court agreed with CASE that section 11873 prohibits the Governor from furloughing SCIF employees. An order granting the writ of mandate and a corresponding judgment were entered on April 15. The Governor and the Director of DPA filed a timely notice of appeal[2] and the trial court subsequently granted CASE relief from the automatic stay provisions of Code of Civil Procedure section 916, subdivision (a).

Discussion

1. Exclusive Concurrent Jurisdiction

(1) "`Under the rule of exclusive concurrent jurisdiction, "when two [California] superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved." [Citations.] The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and preventing vexatious litigation and multiplicity of suits.'" (People ex rel. Garamendi v. American Autoplan, Inc. (1993) 20 Cal.App.4th 760, 769-770 [25 Cal.Rptr.2d 192].) "`[T]he rule of exclusive concurrent jurisdiction does not require absolute identity of parties, causes of action or remedies sought in the initial and subsequent actions. [Citations.] If the court exercising original jurisdiction has the power to bring before it all the necessary parties, the fact that the parties in the second action are not identical does not preclude application of the rule. Moreover, the remedies sought in the separate actions need not be precisely the same so long as the court exercising original jurisdiction has the *1431 power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings.'" (Id. at p. 770.) When the rule applies, the second action should be stayed, not dismissed. (Id. at p. 771.) "The rule of exclusive concurrent jurisdiction ... is mandatory. Thus, if the conditions are met, the issuance of a stay order is a matter of right." (Id. at p. 772.) However, "[t]he rule of exclusive concurrent jurisdiction is not `jurisdictional' in the sense that failure to comply renders subsequent proceedings void. [Citations.] [¶] Trial court error in determining application of the rule of exclusive concurrent jurisdiction is reversible only where the error results in a miscarriage of justice or prejudice to the party asserting the rule." (Ibid.)
Defendants contend that the doctrine of exclusive concurrent jurisdiction required this action to be stayed in favor of the Sacramento proceedings and that the failure to stay the action resulted in a miscarriage of justice. Defendants argue that they have been prejudiced because the trial court's ruling in this action conflicts with the ruling in CASE I and the conflicting rulings create irreconcilable adjudications of the Governor's authority to furlough CASE employees at SCIF.
The trial court considered this issue to present a "close call" and that "[b]ut for the clarification order ... the exclusive concurrent jurisdiction argument would be rather strong." The court explained that "given the first court's statement [in the February 4 minute order] that it did not have before it the claims of CASE members who weren't employees of executive agencies, and given that SCIF is not an executive branch agency, that limited point being conceded today, ... [t]he court did not have before it... the claims made by those who are before me here today." While the Sacramento court's clarifying minute order does not refer explicitly to SCIF employees, these employees are not "employees of executive branch agencies" to whom the Sacramento court considered its ruling to exclusively apply. Just as the petitions and complaints upon which the Sacramento court ruled did not raise any issues regarding the Governor's authority to order furloughs for the employees of independently elected constitutional officers and other elected state-wide officials, to whom the Sacramento court said its ruling did not apply, those pleadings made no contention with respect to the Governor's authority to order furloughs for SCIF employees, or concerning the effect of the Insurance Code provisions that are disputed in this action. Because the claims of SCIF employees were not adjudicated in CASE I, there is no conflicting adjudication as to those employees.
Defendants emphasize that the rules regarding application of exclusive jurisdiction are "different and less rigid" than those applied for res judicata purposes and do not require "absolute identity of parties." That may be true, *1432 but neither SCIF itself nor any of the individual members of CASE were parties to the Sacramento proceedings and the impact of the relevant Insurance Code provisions was not considered in those proceedings. If the Sacramento judgment is not binding as to the parties or issues in this action, no prejudice can result from considering those issues in this case. Had the trial court considered the exclusive concurrent jurisdiction rule to be applicable here, the action would merely have been stayed, resulting in a delay in the resolution of the action but not necessarily a different outcome.
Moreover, the present action neither threatened nor produced a conclusion that is irreconcilable with the judgment in the Sacramento action. The legal issues resolved in the two proceedings are entirely different. In the Sacramento action the court determined whether the provisions of the Government Code or the terms of the applicable collective bargaining agreements preclude the Governor from imposing furloughs on employees of the executive branch. In the present action, the court determined whether provisions of the Insurance Code preclude the Governor from imposing furloughs on SCIF employees, regardless of his authority with respect to employees of the executive branch. Thus, the court did not err in refusing to stay the present action awaiting the results of an appeal in the Sacramento proceedings.[3]

2. Section 11873

(2) The California Constitution vests the Legislature with plenary power "to create ... and enforce a complete system of workers' compensation, ... including the establishment and management of a State compensation insurance fund." (Cal. Const., art. XIV, § 4.) The Legislature has exercised this authority by creating SCIF within the provisions of the Insurance Code. (§ 11770 et seq.) Section 11873, subdivision (a) provides that except for several provisions specified in subdivision (b), "the fund shall not be subject to the provisions of the Government Code made applicable to state agencies *1433 generally or collectively, unless the section specifically names the fund as an agency to which the provision applies." Under this statutory scheme, "SCIF is at once both an agency of the state and an insurance carrier. In these two roles, it is self-operating and of a special and unique character." (P. W. Stephens, Inc. v. State Compensation Ins. Fund (1994) 21 Cal.App.4th 1833, 1835 [27 Cal.Rptr.2d 107].) "All duties, powers, and jurisdiction relating to the administration of the State Compensation Insurance Fund [are] vested in the Board of Directors ...." (Lab. Code, § 57.5; see Ins. Code, § 11781.) The board's authority over the administration of the fund is comparable to that of "the governing body of a private insurance carrier." (§ 11781.) SCIF is designed by the Legislature to "be fairly competitive with other insurers" and intended to be "neither more nor less than self-supporting." (§ 11775.) SCIF "moneys deposited with the State Treasurer are not state moneys ..." (§ 11800.1) and must be tracked by separate ledger (§ 11800.2). By statute, SCIF's assets are only "applicable to the payment of losses sustained on account of insurance and to the payment of the salaries and other expenses charged against it." (§ 11774.) Profits earned by SCIF may not be retained by SCIF or the state but must be returned to "its insureds as a dividend or credit." (Gordon's Cabinet Shop v. State Comp. Ins. Fund (1999) 74 Cal.App.4th 33, 35 [87 Cal.Rptr.2d 541] ["Under the statutory scheme, SCIF ... is not intended to accumulate and hold assets over and above the amounts needed for liabilities, necessary reserves, and a reasonable surplus."]; see § 11775.)
(3) Defendants note correctly that under section 11873, subdivision (b), SCIF is subject to the Ralph C. Dills Act (Gov. Code, § 3512 et seq.), which contains the collective bargaining provisions for state employees, and to other provisions of the Government Code including sections 19851 and 19849.[4] *1434 The DPA is responsible for "managing the nonmerit aspects of the state's personnel system" and "[i]n general, the DPA has jurisdiction over the state's financial relationship with its employees, including matters of salary, layoffs and nondisciplinary demotions." (Tirapelle v. Davis (1993) 20 Cal.App.4th 1317, 1322 [26 Cal.Rptr.2d 666].) The memorandum of understanding with SCIF employees represented by CASE was negotiated by the DPA.[5] As a statutorily created administrative agency, however, "[t]he DPA can act only to the extent and in a manner consistent with the legislative delegation of authority." (20 Cal.App.4th at p. 1323, fn. 8.) It is unnecessary to decide whether in the absence of more explicit legislation the Ralph C. Dills Act would authorize the Governor to override the authority of SCIF's board of directors over the administration of SCIF by furloughing its employees, because subdivision (c) of section 11873 expressly provides that it does not.
(4) Section 11873, subdivision (c) provides, "Notwithstanding any provision of the Government Code or any other provision of law, the positions funded by the State Compensation Insurance Fund are exempt from any hiring freezes and staff cutbacks otherwise required by law." As the more specific provision, the express exemption found in subdivision (c) is controlling to the extent it conflicts with other more general provisions of the Government Code. (Stone Street Capital, LLC v. California State Lottery Com. (2008) 165 Cal.App.4th 109, 119 [80 Cal.Rptr.3d 326] (5) ["If inconsistent statutes cannot otherwise be reconciled, `a particular or specific provision will take precedence over a conflicting general provision.'"].)
Defendants argue that section 11873 limits only the Governor's authority to lay off employees and does not preclude the Governor from reducing the number of hours each employee works. The trial court rejected this argument, explaining, "The term `staff cutback' has to be read in its commonsense meaning, and to the extent that it is informed by the policy concerns expressed in the legislative history as anything to the contrary, it is that a furlough program designed to reduce the availability of staff is a cutback for purposes of the statute."
(6) The issue of statutory interpretation is reviewed de novo. (California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist. (2002) 95 Cal.App.4th 183, 190 [115 Cal.Rptr.2d 323].) "`Our fundamental task in *1435 construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.'" (Id. at p. 191.)
(7) The trial court's conclusion that section 11873, subdivision (c) limits the Governor's authority to impose furloughs on SCIF employees is consistent with the language of the statute, the larger statutory scheme, and the legislative history of the SCIF authorizing legislation. The authority to determine staffing needs is vested in the SCIF board and not the Governor, consistent with SCIF's structure as a "quasi-governmental entity" mandated to be self-sufficient. (Tricor California, Inc. v. State Compensation Ins. Fund (1994) 30 Cal.App.4th 230, 241 [35 Cal.Rptr.2d 550].) Defendants' suggestion that the exemption for SCIF employees from "staff cutbacks" prevents layoffs but not a reduction in hours is not sensible. Staff is "cut back" whether hours are reduced or employees are terminated. The reduction in total hours worked by SCIF employees is the same whether achieved by a furlough imposed on all employees or the layoff of only some employees. The exemption in subdivision (c) was enacted "to allow SCIF's executive leadership to exercise its best business judgment on SCIF's staffing needs" with the hope that such flexibility would "have a positive impact on controlling policy costs and providing better service to policyholders." (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 227 (2003-2004 Reg. Sess.) Sept. 29, 2003, p. 15.) This objective would be undermined by the interpretation of the statute that defendants propose. Moreover, defendant's interpretation would not achieve the announced purpose of the Governor's executive order, to improve the state's ability to meet its financial obligations. Any cost savings realized from a furlough of SCIF employees would accrue not to the benefit of the state's general fund, but to the ledger account maintained for the exclusive use of SCIF.
(8) Hence, we conclude that the trial court correctly interpreted section 11873, subdivision (c) and issued a writ of mandate directing the Governor to set aside Executive Order No. S-16-08 insofar as it applies to SCIF employees represented by CASE.

*1436 Disposition
The judgment granting the petition for writ of mandate is affirmed.
McGuiness, P. J., and Siggins, J., concurred.
NOTES
[1] All statutory references are to the Insurance Code unless otherwise noted.
[2] In the trial court, the Controller and the SCIF president did not take a position on the merits. On appeal, both the Controller and the SCIF president have filed briefs arguing that the judgment should be affirmed.
[3] Defendants did not attempt to transfer the present action to the Sacramento Superior Court. Although they sought to transfer to Sacramento the majority of "furlough actions" pending in Alameda and San Francisco, they expressly excluded the present action from their petition for coordination filed under Code of Civil Procedure section 403. Defendants explained that they were not seeking to transfer this action both because the present appeal was already pending and because the present action involves "a very narrow issue." The request for judicial notice of defendant's memorandum of points and authorities in support of the petition to coordinate is granted. We also grant the subsequent motion to take judicial notice of the petition to transfer and consolidate appeals which the Governor, the DPA and others have filed in the Supreme Court asking the court to consolidate seven appeals pending in the Courts of Appeal involving challenges to the Governor's furlough order. The petition explicitly excludes this and two other furlough cases pending in this court because "they present limited issues of law not directly related to the threshold issue presented by this petition, namely, whether the Governor has the authority to furlough the California state workforce, in whole or in part." The petition states that this and one other case "were not included ... because they affect only SCIF employees."
[4] Government Code section 19849 provides: "(a) The department shall adopt rules governing hours of work and overtime compensation and the keeping of records related thereto, including time and attendance records. Each appointing power shall administer and enforce such rules. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." Government Code section 19851 provides: "(a) It is the policy of the state that the workweek of the state employee shall be 40 hours, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies. It is the policy of the state to avoid the necessity for overtime work whenever possible. This policy does not restrict the extension of regular working-hour schedules on an overtime basis in those activities and agencies where it is necessary to carry on the state business properly during a manpower shortage. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."
[5] "For purposes of collective bargaining the director of the DPA [is] designated as the Governor's representative to meet and confer with recognized employee organizations under the Ralph C. Dills Act." (Tirapelle v. Davis, supra, 20 Cal.App.4th at pp. 1322-1323.) All CASE members who are a part of bargaining unit 2, whether they are employed by SCIF, another elected official or an executive agency, are subject to the same memorandum of understanding.