186 Cal.App.4th 747 (2010)
112 Cal. Rptr. 3d 52
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000 et al., Plaintiffs and Respondents,
v.
ARNOLD SCHWARZENEGGER, as Governor, etc., et al., Defendants, Cross-defendants and Appellants;
JOHN CHIANG, as Controller, etc., Defendant, Cross-defendant and Respondent;
JANET FRANK, Defendant, Cross-complainant and Respondent.
No. A126525.
Court of Appeals of California, First District, Division Two.
June 11, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*748 Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant, Meredith H. Packer, K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Will M. Yamada for Defendants, Cross-defendants and Appellants.
Paul Harris, J. Felix De La Torre and Monica Ahuja for Plaintiffs and Respondents.
Edmund G. Brown, Jr., Attorney General, Jonathan K. Renner, Assistant Attorney General, Zackery P. Morazzini and Ross C. Moody, Deputy Attorneys General, for Defendant, Cross-defendant and Respondent.
Manatt, Phelps & Phillips, Ronald B. Turovsky and Becky S. Walker for Defendant, Cross-complainant and Respondent.

*749 OPINION
RICHMAN, J.
This litigation was initiated by the Service Employees International Union, Local 1000 (SEIU), and a number of SEIU members on behalf of nine bargaining units of employees of the State Compensation Insurance Fund (State Fund) against the Governor and the Director of the Department of Personnel Administration (Director). The object of the litigation was to halt the mandatory imposition of furlough on State Fund employees for two days per month in accordance with the Governor's Executive Order S-16-08. Janet Frank, the president of the State Fund, was originally named as a defendant by SEIU, but she subsequently filed a cross-complaint for the same relief as against the Governor's Executive Order S-13-09, which mandated a third furlough day per month.[1]
On September 24, 2009, Judge Charlotte Woolard of the San Francisco Superior Court entered a judgment issuing a writ of mandate and a permanent injunction halting the practice of mandatory furlough days for State Fund employees represented by the SEIU. The judgment also ordered the Controller "to immediately pay all State Fund employees their full salaries without any reductions pursuant to the illegal furlough directed by the unlawful Executive Orders[,] and ... make State Fund employees whole, through back pay with legal interest, for the unlawful reduction of their salaries." The Governor and the Director have appealed.
Several months earlier, Judge Peter Busch of the San Francisco Superior Court had also granted mandate and injunctive relief against the Governor, the Controller, and the Director in litigation commenced by the California Attorneys, Administrative Law Judges and Hearing Officers in State Employment (CASE), a bargaining unit of State Fund employees not represented by the SEIU.[2] Judge Busch's judgment was limited to furloughs purportedly mandated by the Governor's Executive Order S-16-08. First Judge Busch, and then Judge Woolard, concluded that the doctrine of *750 "exclusive concurrent jurisdiction" did not require them to defer to a determination of the Sacramento Superior Court upholding the furlough program as applied to executive branch agencies. Judge Woolard subsequently also agreed with Judge Busch the mandated furloughs of State Fund employees contravened Insurance Code section 11873 (section 11873).[3]
The Governor and the Director appealed first from Judge Busch's judgment, challenging his conclusions regarding exclusive concurrent jurisdiction and the proper construction of section 11873. Division Three of this District found no error in Judge Busch's conclusions on these two points, and affirmed his judgment. (California Attorneys, etc. v. Schwarzenegger (2010) 182 Cal.App.4th 1424 [106 Cal.Rptr.3d 702], review granted May 20, 2010, S182581.) The Governor and the Director did not petition our Supreme Court for review, but the court granted review on its own motion.
Here, the Governor and the Director assert three claims of error, the first two of which challenge the identical conclusions made by Judge Woolard. We have examined the reasoning of the Division Three opinion authored by Justice Pollak, and find it soundand dispositive of the first two issues.[*]

Exclusive Concurrent Jurisdiction[*]

Section 11873[*]
In sum, we conclude that Justice Pollak's thorough analysis was right on, and disposes of the Governor's first two arguments. We have only one thing to add: Although Division Three's opinion dealt only with the first of the Governor's executive orders, none of the parties here has advanced a ground for differentiating the legal basis of the Governor's second executive order.

Backpay
The only new argument presented here concerns an overt difference between the two judgments. In contrast to Judge Busch, Judge Woolard *751 expressly ordered that State Fund employees be made whole with backpay for the days they were furloughed pursuant to the Governor's executive orders. The Governor and the Director contend that the award of backpay is defective, procedurally, evidentially, and substantively. We disagree.
The Governor and the Director claim the award is procedurally improper in that Judge Woolard violated Code of Civil Procedure section 473 because "after issuing its order granting the writ [sic]" on September 10, 2009, "the court impermissibly granted respondents' request to include an award of back pay in the writ." We conclude that Judge Woolard did nothing "impermissible."
What Judge Woolard filed on September 10 was an "Order Granting Writ and Injunction" filed after she conducted a hearingheld, not incidentally, at the request of the Governor and the Directoron her tentative ruling. The following day the State Fund president submitted proposed forms of the judgment and the writ of mandate, but the Governor and the Director refused to approve the forms on the ground that backpay was not included within Judge Woolard's ruling. Four days later, the SEIUwhich had expressly asked for backpay in its complaintsubmitted papers "ask[ing] the Court to adopt its proposed judgment and writ of mandate, which includes back wages as a remedy." Both the State Fund president and the SEIU advised Judge Woolard that the procedure of an order granting the writ, followed by a formally designated judgment, was the procedure adopted by Judge Busch. The Controller added his voice in support of SEIU. On September 24, 2009, after receiving several hundred pages of filings, supplemental briefing, and learning that the Controller had treated Judge Busch's judgment as covering backpay,[4] Judge Woolard entered a judgment and caused a peremptory writ of mandate to be issued.
*752 (1) The September 10 order did not, in and of itself, qualify as an appealable, final judgment, because it was not the ultimate determination of the rights of the parties. (See Code Civ. Proc., § 577; Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143].) To mention only the most obvious missing feature, the order gave no indication of the form of the permanent injunction the court indicated would be issued. Because this issue was not addressed in the order, but appears to have been "left for future consideration," we conclude that "[something] further in the nature of judicial action ... [was] essential to a final determination" and thus was not intended by Judge Woolard to be her final word. (See Lyon v. Goss (1942) 19 Cal.2d 659, 670 [123 P.2d 11].) Moreover, this court and others have recognized that ensuring payment of unpaid or wrongfully withheld salary to public employees is a legitimate function of the writ of mandate, particularly where recovery of money is ancillary to determination of a claim that the public entity employer is acting in violation of law amounting to the violation of a ministerial duty. (E.g., Holt v. Kelly (1978) 20 Cal.3d 560, 565, fn. 5 [143 Cal.Rptr. 625, 574 P.2d 441]; Tevis v. City & County of San Francisco (1954) 43 Cal.2d 190, 198 [272 P.2d 757]; California School Employees Assn. v. Torrance Unified School Dist. (2010) 182 Cal.App.4th 1040, 1044 [106 Cal.Rptr.3d 375]; A.B.C. Federation of Teachers v. A.B.C. Unified Sch. Dist. (1977) 75 Cal.App.3d 332, 340-342 [142 Cal.Rptr. 111]; Reed v. Board of Education (1934) 139 Cal.App. 661, 663 [34 P.2d 758].) Because the September 10 order did not constitute a final judgment, Code of Civil Procedure section 473 is not implicated.
Even less impressive is the claim of the Governor and the Director that "there is no evidence in the record to support an award of back pay," specifically, that Judge Woolard was not provided "with any facts of unpaid compensable time, or how many hours of retroactive pay each employee is allegedly due, if any." Judge Woolard was deciding the legal issue of the entitlement of a group of public employees not to have existing rates of pay reduced, not an individualized accounting of dollars and cents owed for a breach of contract. The verified pleadings of SEIU and the president alleged that State Fund employees were being furloughed, with the consequence that "the salaries ... of those employees have been significantly reduced." The Governor and Director admitted that "furloughs have been in effect since *753 February 6, 2009 and have caused a reduction in employee work hours," although they denied that the furloughs resulted in reducing the salary of those individuals.
Moreover, it seems preposterous to require the court to hear from every single one of the more than 5,800 State Fund employees represented by SEIU in this action (see fn. 2, ante) before being able to order monetary relief. The Controller clearly indicated an ability to effectuate particularized monetary relief if directed to do so by the court. (See fn. 4, ante.) If the Controller could make individualized deductions for State Fund employees' furlough days, it was entirely reasonable for Judge Woolard to accept that he could compute backpay for those same individuals for those days. Indeed, at oral argument counsel for the Controller indicated that the entire process would require only a few keystrokes on a computer. Judge Woolard was certainly within her authority to presume the Controllerwho had authorized backpay to the members of the bargaining unit covered by Judge Busch's judgment could carry through on his implicit representation that he could implement the court's judgment as to these other State Fund employees. (See Evid. Code, § 664.)
(2) Finally, the Governor and the Director attack the backpay award as "contrary to the concept of parity among civil service employees" by "creating a disparity in work schedules, hours, and compensation among similarly situated employees in the same state bargaining unit." Thus, according to the Governor and the Director, the backpay award "thwarts the collective bargaining process contained in the Dills Act." The Ralph C. Dills Act (Gov. Code, §§ 3512-3524) generally governs relations between the state and its employees. It gives state employees the right to be represented by employee organizations, as well as collective bargaining rights, in their dealings with the state relative to hours, wages, and the ancillary terms and conditions of their employment, and establishes a framework for collective bargaining with the state. (See Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 175-178 [172 Cal.Rptr. 487, 624 P.2d 1215]; California Assn. of Professional Scientists v. Schwarzenegger (2006) 137 Cal.App.4th 371, 380 [40 Cal.Rptr.3d 354]; Department of Personnel Administration v. Superior Court (1992) 5 Cal.App.4th 155, 175-176 [6 Cal.Rptr.2d 714].) Judge Woolard did nothing more than restore the state of affairs that existed between State Fund employees and the state prior to issuance of the two executive orders. The Governor and the Director have not provided particulars demonstrating how, by reestablishing that relationship, Judge Woolard *754 impinged upon "the concept of parity among civil service employees" or in any way "thwart[ed] the collective bargaining process contained in the Dills Act."
The judgment is affirmed.
Kline, P. J., and Lambden, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for partial publication as printed here.
[1] SEIU's complaint also named the State Controller (Controller) as a defendant. The Controller took no position on the merits below, and has filed a brief in support of the judgment.
[2] We are told in the president's cross-complaint that the attorney bargaining unit covered by Judge Busch's order has approximately 465 members. The State Fund has approximately 7,900 employees, of whom 6,272 are represented by SEIU. The president took the position in her cross-complaint that "all positions funded by the State Fund are exempt from furloughs ... [T]he furloughs of State Fund employees result in no savings to the State of California since ... no State of California moneys go to State Fund" for employee salaries.
[3] All unspecified statutory references are to the Insurance Code.
[*] See footnote, ante, page 747.
[4] In his "Memorandum ... Regarding Back Pay Issue" dated September 22, the Controller informed Judge Woolard as follows:

"In a prior action involving State Fund and the union California Attorneys in State Employment (`CASE'), Judge Peter Busch entered an order and judgment with similar language [presumably referring to the September 10 order]. In response to that language, the Controller issued both prospective relief as well as back pay to the State Fund employees at issue. The Controller believed that because the Court had made an explicit finding that the furloughs were void ab initio as to State Fund employees, that the employees were entitled to remedies which would make them whole, and leave them in a position as though no unlawful furlough had been applied to them. [¶] This action presents similar facts and legal principles to the CASE litigation, and nearly identical orders. The relevant employees of State Fund would have worked and received wages for each day they were unlawfully furloughed. Accordingly, a make whole remedy, including back pay, would appear to be appropriate for them."
Although naturally willing to "defer to the Court's judgment on this matter," the Controller did emphasize the need for prompt action: "The administrative issues presented by changing the pay rates of State Fund employees is not incidental, and requires thousands of hand entries.... The Controller wishes to implement the Court's ruling as soon as practicable so that these workers can receive the benefits secured for them by this litigation. Notwithstanding the administrative burdens and risk of errors inherent in implementing pay rate changes twice, ... the Controller took steps to implement the relief ordered by this Court prospectively, and believes that State Fund employees represented by SEIU will receive full paychecks on the next payday, September 30."