Filed 6/14/13  Cal. Teachers Assn. v. Governing Bd. of Salinas City Elementary School Dist. CA6
Opinion on remand from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA TEACHERS ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GOVERNING BOARD OF THE SALINAS CITY ELEMENTARY SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | H033788 <br> (Monterey County <br> Super. Ct. No. M91905) |

This matter is before us for the second time, having been transferred by the California Supreme Court for reconsideration in light of *United Teachers of Los Angeles v. Los Angeles Unified School District* (2012) 54 Cal.4th 504 (*United Teachers*).

Plaintiffs California Teachers Association (CTA) and the Salinas Elementary Teachers Council (SETC) (collectively, the unions) appeal from a judgment of dismissal entered after the sustaining without leave to amend of a demurrer by defendants Governing Board of the Salinas City Elementary School District and the Salinas City Elementary School District (collectively, the District) to the unions' verified petition for writ of mandate and complaint for declaratory relief (the complaint).  The basis for the

trial court's ruling was lack of jurisdiction due to the unions' failure to exhaust the administrative remedy specified in the parties' collective bargaining agreement (CBA).

On appeal, the unions contend that "[t]he analysis required by [*United Teachers*] . . . dictates reversal of the trial court's judgment." Pointing out that claims to enforce mandatory Education Code provisions are not subject to internal exhaustion requirements, they insist that their complaint alleged "strictly statutory claims . . . for violations of the teacher pay uniformity requirements of Education Code [section] 45028." Having reconsidered the matter in light of *United Teachers*, we conclude that to the extent the unions' complaint alleges violations of the teacher pay uniformity requirements of Education Code section 45028[1] (as opposed to "misinterpretation[s], misapplication[s], or violation[s] of" the CBA), the unions may pursue those claims in court without exhausting their administrative remedies. Because the complaint as currently drafted does not permit us to determine whether the unions may pursue *all* or only some of their claims in court, we vacate our original decision, reverse the judgment, and remand the matter for further proceedings.

## I. Background

As this case is before us after the sustaining of a demurrer, we accept as true all properly pleaded material allegations in the unions' verified complaint. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1087 (*Mirkin*).) That complaint alleged the following.

CTA is an employee organization that represents its members "in all matters relating to their employment." SETC is a local chapter of CTA. SETC is "the exclusive representative employee organization for the credentialed employees of [the] District."

---

[1] Further statutory references are to the Education Code unless otherwise noted.

The District has "jurisdiction and control over the employment, status, classification and salary of [the unions'] members who are certificated employees of the District."

SETC and the District are parties to a CBA that was in effect at all times relevant to their dispute. A negotiated salary schedule is a part of that agreement.[2] The schedule is in the form of a grid, with 22 horizontal rows or "step[s]" representing years of teaching experience and six vertical columns representing hours of training beyond a bachelor's degree. "Teachers are placed and paid on the salary schedule according to their years of teaching experience (service) and education (training)." As teachers gain years of service, they progress vertically on the schedule, earning salary increases called "step" increases. As they acquire training credits, they progress horizontally on the schedule, earning salary increases called "class" or "column" increases.

"Salary placement on [the schedule] was based solely on years of training and years of experience." With respect to teacher advancement on the salary schedule, however, "[t]he District has interpreted th[e] agreement for many years to limit . . . advancements . . . to one step and one column per year." Additionally, "in the 2005-06 school year the District [negotiated CBA language that] froze the advancement . . . for teachers on steps 1 through 11 but permitted teachers on steps 12, 14 and 18 to advance . . . . This action had the effect of creating additional salary uniformity violations." The "failure to classify teachers on a uniform basis has caused . . . a disparity in . . . salaries, in that numerous teachers with the same experience and training are being paid at different rates in violation of their rights under the Education Code."

The CBA includes a five-step grievance resolution process that culminates in binding arbitration if the grievance is not resolved at an earlier step. A "grievance" is "a written claim by a grievant that a controversy, dispute or disagreement of any kind exists

---

[2] Copies of the salary schedules for the 2001-2002 through 2005-2007 school years were attached as exhibits to the complaint.

arising out of or in some way involving an alleged misinterpretation, misapplication, or violation of this [CBA]." A "grievant" is "[a]n employee or group of employees or SETC, provided an employee(s) has been adversely affected."

In April 2008, SETC met with District officials. In a letter sent the day after that meeting, SETC told the District that "[a]s stated in our . . . meeting, it has come to [our] attention that the method agreed to by the District and SETC to advance our bargaining unit members on the salary schedule is in effect, illegal" because "[o]ur members are not advancing on the salary schedule as stipulated in . . . Section 45028." The letter demanded that the District "take immediate action to determine which bargaining unit members are in need of a salary correction and take the appropriate actions to compensate these bargaining unit members." A copy of the demand letter was attached to the complaint as exhibit C.

After the District "wrongfully failed and refused . . . to reclassify [SETC's] members according to Education Code § 45028," the unions sued, praying for an order compelling the District (1) to "reclassify each teacher on the salary schedule on the basis of [a] uniform allowance for . . . years of experience and training," (2) to pay "back pay with prejudgment interest," and (3) to "calculate and pay the proper retirement contributions . . . ." The complaint also sought declarations that the District "violated . . . section 45028 and the teachers' rights thereunder" by failing to classify teachers uniformly according to their years of experience and training, and that it was required to pay teachers back pay with interest and to make proper retirement contributions.

The District demurred on two grounds: (1) lack of subject matter jurisdiction "because [the unions] failed to adequately plead they exhausted the [grievance/arbitration procedures[3]] in the [CBA]" and (2) failure to state a cause of action. The trial court

_____

3        This court granted the District's unopposed request that we judicially notice a certified copy of the grievance/arbitration procedures. The District had filed a similar request in the trial court. We assume that request was also unopposed, given that a month

4

sustained the demurrer on the first ground. "I agree with that position. I agree that the grievance procedure must be exhausted before seeking judicial review. So I'll sustain the demurrer without leave to amend." The case was dismissed, and the unions timely appealed.

This court affirmed, holding in our original decision that where the complaint alleged that the District's "*interpretation*" of the CBA created teacher pay disparities in violation of section 45028, the parties' dispute was within the CBA's definition of "grievance," and the unions could not avoid arbitration simply because their complaint also alleged statutory violations. (Italics added.) The unions petitioned for review, arguing that they were not required to exhaust their administrative remedies before seeking court relief because their complaint did not allege any misinterpretation of the CBA but instead sought to enforce a mandatory Education Code provision guaranteeing teachers' rights to be paid uniformly.

The California Supreme Court granted review but deferred further action until it decided *United Teachers*. After issuing its decision in that case, the high court transferred this case to us with directions to vacate our original decision and reconsider the matter in light of *United Teachers*. We gave the parties an opportunity to submit supplemental briefing, and we authorized the filing of several amicus curiae briefs.

## II. Discussion

The unions contend that "[t]he analysis required by [*United Teachers*] . . . dictates reversal of the trial court's judgment." The dispute in that case arose after a school

---

later, the unions attached a copy of "pertinent sections" of those procedures to their brief opposing the District's demurrer. The appellate record contains no express ruling on the District's request for judicial notice, but the order sustaining the demurrer says the court "read and considered" it. Where, as here, the grievance/arbitration procedures were necessary for the court's decision, we assume the trial court granted the request. (Evid. Code, §§ 453, 456; *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918-919.)

5

district approved the conversion of a public school to a charter school. The teachers' union filed grievances alleging violations of CBA provisions purporting to regulate such conversions, and when informal attempts at resolution failed, the union petitioned to compel arbitration of the grievances. (*United Teachers*, *supra*, 54 Cal.4th at pp. 509-511.) The district opposed the petition, arguing that the CBA provisions at issue unlawfully conflicted with and were therefore preempted by the statutory scheme for charter school conversions. (*Id.* at pp. 509-510.) The trial court agreed, but the Court of Appeal reversed, holding that it was not for the trial court on a petition to compel arbitration "to decide whether there was a conflict between the [CBA] provisions and the charter school statutes." (*Id.* at p. 510.) Instead, the trial court was limited to determining whether there was a valid agreement to arbitrate. (*Ibid.*)

The California Supreme Court granted review. (*United Teachers*, *supra*, 54 Cal.4th at p. 512.) The court explained that it was called upon "to resolve a tension between two principles: (1) collective bargaining provisions in conflict with the Education Code are unenforceable, and (2) courts generally do not examine the merits of the underlying dispute in deciding whether to enforce arbitration agreements." (*Ibid.*) The first principle derives from the non-supersession clause of the Educational Employment Relations Act (EERA). (*Id.* at p. 513; Gov. Code, § 3540 ["This chapter [pertaining to the EERA] shall not supersede other provisions of the Education Code . . . ."].) The EERA establishes a system of collective bargaining in public education "as to subjects within the statutorily defined scope of representation." (*United Teachers*, at p. 512; Gov. Code, §§ 3540-3549.3.) "The parties may enter into a binding agreement [citation], and they may agree that disputes involving interpretation, application or violation of the agreement will be resolved through binding arbitration. [Citations.]" (*United Teachers*, at pp. 512-513.) The statutorily-defined scope of representation is "defined broadly" to include, e.g., wages, hours, benefits, and procedures for evaluation, discipline, layoffs, and grievances, but it "does not include

6

matters that would annul, set aside, or replace portions of the Education Code." (*Id.* at pp. 515-516.)  Some Education Code provisions "'mandate certain procedures, protections and entitlements for classified employees,'" and it is the intent of the EERA's non-supersession clause "'to preclude contractual agreements which would alter these statutory provisions.'" (*Id.* at pp. 513-514.)  Such agreements are unenforceable because enforcement "'would result in replacing or setting aside a nonnegotiable and mandatory provision of the Education Code, a result . . . [the non-supersession clause] sought to avoid.'" (*Id.* at p. 514.)

Nonenforcement would "take various forms," the high court explained, "depending on the point at which the attempt to enforce the unlawful provision occurs." (*United Teachers*, *supra*, 54 Cal.4th at p. 520.)  "[A] court asked to compel arbitration of a collective bargaining provision that directly conflicts with the Education Code . . . should deny the petition to compel arbitration" even if the parties agreed to submit it to arbitration.  This is because "Code of Civil Procedure section 1281.2's general mandate that a court shall compel arbitration where a valid arbitration agreement exists is qualified by the EERA's placement of certain subjects governed by the Education Code beyond the scope of an arbitration agreement between a school district and an employee union." (*United Teachers*, at pp. 516, 520.)  "[T]he EERA makes clear that a grievance is inarbitrable when it arises from a matter . . . on which collective bargaining is statutorily preempted." (*Id.* at p. 520.)

"When there are doubts about the arbitrability of a grievance, however, those doubts should be resolved in favor of arbitration," and "[o]nce a grievance crosses the threshold of arbitrability because the matter in dispute is not excluded from collective bargaining by the Education Code or by the parties themselves, a court may not deny a petition to compel arbitration on the ground that the grievance lacks merit." (*United Teachers*, *supra*, 54 Cal.4th at p. 520.)  If the matter proceeds to arbitration and results in

7

an award that conflicts with the Education Code, however, the award must be vacated. (*Ibid.*)

After "reaffirm[ing]" the principle that collective bargaining provisions that annul, set aside, or replace provisions of the Education Code cannot be enforced, the court turned its attention to whether the Education Code preempted the provisions the union sought to enforce. (*United Teachers*, *supra*, 54 Cal.4th at p. 520.) It began by examining the relevant statutes, concluding they made it "clear" that the statutory grounds for denying a charter school petition or revoking an existing charter are exclusive. (*Id.* at p. 524.) Reading those statutes in conjunction with the EERA's non-supersession clause made it similarly "clear" that "the approval or denial of a charter petition may not be controlled by a [CBA]." (*Ibid.*) Thus, "under the Education Code, an arbitrator has no authority to deny or revoke a school charter." (*Id.* at p. 510.)

The court then turned its attention to whether the particular CBA provisions at issue conflicted with the relevant statutes. (*United Teachers*, *supra*, 54 Cal.4th at p. 524.) It could express "*no view*" on that question, however, because the union "ha[d] not identified with sufficient specificity which [CBA] provisions the District allegedly violated" or which parts of certain enumerated provisions the union wanted to enforce. (*Id.* at pp. 510, 527, italics added.) "Rather than guess," the high court remanded the case to the trial court with instructions that it direct the union "to identify such provisions in an amended petition to compel arbitration and to explain why those provisions do not set aside, annul, or replace provisions of the Education Code. [The union] should identify *with specificity* such collective bargaining provisions." (*Id.* at p. 527.) The trial court could then "identify those provisions [at issue] and . . . determine whether their enforcement would set aside, annul, or replace provisions of the Education Code." (*Id.* at p. 528)

The high court emphasized that "[f]or reasons of judicial economy and judicial restraint, and to minimize incentives toward overbroad and poorly drafted grievances,

8

courts should apply Education Code preemption analysis *only to the specific collective bargaining provisions that are actually at issue in a given case*. Where . . . it is unclear which collective bargaining provisions are at issue, the court should request clarification." (*United Teachers*, *supra*, 54 Cal.4th at p. 527, italics added.) The court cautioned that "a party may not claim that a nonpreempted provision is at issue in order to compel arbitration, but then attempt to arbitrate a preempted provision" or, conversely stated, claim that a preempted provision is at issue to avoid arbitration and then attempt to adjudicate a nonpreempted provision. (*Ibid.*) "Such a bait-and-switch tactic," the court warned, "would lead to vacatur of the arbitration award." (*Ibid.*)

Application of the *United Teachers* framework here requires us first to determine whether section 45028 is, in whole or in part, a mandatory Education Code provision. Examination of the legislative history reveals that the Legislature has amended section 45028 and a related Government Code provision several times since the 1960's, restricting and then increasing school districts' flexibility with respect to salary schedules. (See *California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 191-192.) Since 1996, section 45028 has provided that "each person employed by a school district in a position requiring certification qualifications . . . shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience, *except* if a public school employer and the exclusive representative . . . mutually agree to a salary schedule based on criteria other than a uniform allowance for years of training and years of experience pursuant to Chapter 10.7 (commencing with Section 3540) of the Government Code. . . . [¶] . . . *In no case* shall the governing board of a school district draw orders for the salary of any teacher in violation of this section, nor shall any superintendent draw any requisition for the salary of any teacher in violation thereof." (§ 45028, subd. (a)(1) & (a)(2), italics added.) Government Code section 3543.2 makes classification on the salary schedule "on the basis of uniform allowance for years of training and years of

9

experience" the default method if the parties cannot agree on a salary schedule "based on criteria other than a uniform allowance for years of training and years of experience." In our view, the "[i]n no case" language of section 45028, subdivision (a)(2) and the default proviso in Government Code section 3543.2, subdivision (e) evidence the Legislature's intent to give school districts and their employee unions two salary classification options: (1) the default option of classification "on the basis of uniform allowance for years of training and years of experience," or (2) the exception option—i.e., classification "based on criteria other than a uniform allowance for years of training and years of experience . . . ." (§ 45028, subd. (a).) The first or "default" option is the only one at issue on this appeal.[4] That is because we must accept as true the unions' straightforward and unambiguous allegations that "[t]eachers are placed and paid on the salary schedule according to their years of teaching experience (service) and education (training)," and "[s]alary placement on [the schedule] was based *solely* on years of training and years of experience." (Italics added.) (*Mirkin*, *supra*, 5 Cal.4th at p. 1087.) The exception in section 45028, subdivision (a) is not implicated on these allegations. The statute requires school districts to classify teachers on the salary schedule "on the basis of uniform allowance" for years of training and years of experience. (§ 45028, subd (a).)

We next examine the unions' complaint to determine whether it alleges violations of section 45028's "uniform allowance" requirement, because to the extent it does, the

---

[4]      We note the District's assertion that in this case, teachers were not classified on the salary schedule based *solely* on years of training and years of experience because the unions negotiated the salary freezes with the District under the exception option to section 45028, subdivision (a). But that argument is not properly raised by demurrer. (*Salsbery v. Ritter* (1957) 48 Cal.2d 1, 6, fn. 2.) "A demurrer is simply not the appropriate procedure for determining the truth of disputed facts." (*Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879.) At this early stage of the proceedings, we need not consider what might constitute "criteria other than a uniform allowance for years of training and years of experience . . . ." (§ 45028, subd. (a).)

unions did not need to exhaust their administrative remedies, and the demurrer should have been overruled. (*United Teachers*, *supra*, 54 Cal.4th at pp. 520-521.)

The record we may consider on appeal from the sustaining of a demurrer is limited. "[W]e . . . do not go beyond the face of the complaint and matters of which the trial court took judicial notice," although we may consider facts appearing in exhibits attached to the complaint. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8, fn. 3; *Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567-568.) We accept as true all the material allegations of the complaint, reasonable inferences that can be drawn from those allegations, and facts that may properly be judicially noticed. (*Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 422; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We do not accept as true contentions, deductions, or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We "review the complaint de novo to determine . . . whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879, fn. omitted.) The denial of leave to amend is reviewed for abuse of discretion. (*Blank*, at p. 318.)

The unions argue that their complaint alleges two violations of section 45028—(1) the District's one step/one column per year limitation on advancements on the salary schedule, and (2) the imposition of a salary freeze in the 2005-2006 school year for teachers on some but not all steps of the schedule. We address each in turn, keeping in mind the high court's directive that "courts should apply Education Code preemption analysis *only to the specific collective bargaining provisions that are actually at issue in a given case*" and should request clarification when it is unclear which collective bargaining provisions are at issue. (*United Teachers*, *supra*, 54 Cal.4th at p. 527, italics added.)

11

## A. One Step/One Column Per Year Limitation Allegations

Paragraph 13 of the complaint alleges that at all relevant times, there was a CBA in effect between the parties, that "[t]he District *has interpreted this agreement* for many years to limit teacher's [*sic*] advancements on the salary schedule to one step and one column per year," and that "[t]he *District's interpretation* and/or restriction are contrary to Education Code § 45028." (Italics added.) We can infer from these allegations and from the unions' demand letter referring to "the method *agreed to by the District and SETC* to advance our bargaining unit members on the salary schedule" that the one step/one column limitation on advancements is governed by a provision (or provisions) in the CBA. (Italics added.) The reasonableness of this inference is bolstered by the unions' assertions below and in their supplemental opening brief in this court that "*by complying with the CBA*, the District violated the Education Code." (Italics added.) It is further bolstered by the District's assertion below that "the controversy involves the interpretation of ambiguous language in a collective bargaining agreement . . . ."

The complaint does not identify any such language or provision. Further, only parts of the CBA are included in the record before us. Chart-like salary schedules are attached to the complaint as exhibits A-1, A-2, and A-3, but we see nothing in those schedules that necessarily compels the one step/one column per year limitation the unions complain of. We are thus presented with the same dilemma the *United Teachers* court faced. (*United Teachers*, *supra*, 54 Cal.4th at p. 527.) Because we do not know which CBA provisions are implicated in the one step/one column per year limitation on advancements, we cannot analyze whether those provisions "directly conflict" with section 45028, subdivision (a)'s salary uniformity provision, nor can we determine whether litigation challenging the District's reliance on them is subject to the CBA's grievance/arbitration procedures. (*United Teachers*, *supra*, 54 Cal.4th at pp. 513, 516.) It may be that the District or both parties have been proceeding pursuant to CBA provisions that "directly conflict" with section 45028, subdivision (a), in which case

12

litigation challenging the District's reliance on them would not be subject to the CBA's grievance/arbitration procedures. (*United Teachers*, at pp. 513, 516.) But it might also be that the District or both parties have been proceeding pursuant to facially-neutral CBA provisions that do not "directly conflict" with section 45028. subdivision (a). (*Ibid.*) In the latter case, the fact that a facially-neutral CBA provision may have been *interpreted* in a way that conflicts with section 45028, subdivision (a), and whether that provision might be equally susceptible of an interpretation that would not violate that section, would, in our view, be a question of contract interpretation. Any "controversy, dispute or disagreement" involving that interpretation would be a matter for an arbitrator to decide in the first instance. (See *United Teachers*, *supra*, 54 Cal.4th at p. 520 ["When there are doubts about the arbitrability of a grievance, however, those doubts should be resolved in favor of arbitration."].) We do not decide those issues here.

*United Teachers* directs us not to guess but to instead request clarification when it is unclear which CBA provisions are at issue. (*United Teachers*, *supra*, 54 Cal.4th at p. 527.) The unions should have the opportunity to amend their complaint to allege with specificity which CBA provisions are at issue. (*United Teachers*, at pp. 510, 527.) A remand is appropriate to permit them to do so and to allow the parties to address and the trial court to determine whether those provisions "directly conflict" with section 45028, subdivision (a). (*United Teachers*, at pp. 520, 527-528.)

**B. Salary Freeze Allegations**

Paragraph 14 of the complaint alleges that "in the 2005-06 school year the District froze the advancement of salary steps for teachers on steps 1 through 11 but permitted teachers on steps 12, 14 and 18 to advance on the salary schedule." "This action had the effect of creating additional salary uniformity violations." Paragraph 14 identifies the CBA provisions describing the salary freeze, and the relevant "Collective Bargaining Contract language" is attached as exhibits B-1 and B-2. A 2008 memorandum of

understanding (MOU), attached to the complaint as exhibit B-3, describes the effect of those provisions: "According to previously negotiated language regarding the 2005-2006 Step and Column Freeze, bargaining unit members frozen on Steps 1-11 will *not* be credited with that year; bargaining unit members frozen on Steps 12-22 will be credited with that year." (Italics added.) We note that the District acknowledged below that these exhibits contain "the relevant Collective Bargaining Contract language . . . ."

In sum, the complaint alleged that salary placement on the schedule was based *solely* on years of training and years of experience, yet a salary freeze was implemented pursuant to specific CBA provisions that, in effect, "annul[led], set aside, or replace[d]" section 45028, subdivision (a)'s requirement that teachers so classified "shall be classified on the salary schedule on the basis of *uniform* allowance for years of training and years of experience." (*United Teachers*, *supra*, 54 Cal.4th at p. 515; § 45028, subd. (a), italics added.) *United Teachers* makes it plain that litigation challenging such provisions (or, as here, the District's reliance on them) is not subject to a CBA's grievance/arbitration procedures. (*United Teachers*, *supra*, 54 Cal.4th at pp. 513, 516.) We conclude that the salary freeze allegations, viewed in the light of *United Teachers*, were sufficient to withstand the District's demurrer; therefore, determination of the merits of the salary freeze claim can proceed in the trial court.

Because we cannot draw the same conclusion with respect to the one step/one column per year limitation on advancements on the salary schedule, and because neither the trial court nor the parties had the benefit of the high court's *United Teachers* decision, we will remand the matter for further proceedings in the trial court. At this early stage of the proceedings, we express no opinion on the merits of the unions' one-step/one-column or salary freeze claims.

14

### III.  Disposition

Our previous decision in this case, filed on July 14, 2010, is vacated.  The judgment is reversed, and the matter is remanded to the trial court with directions to set aside its November 4, 2008 order sustaining the District's demurrer without leave to amend and to enter a new order granting the unions leave to amend.

_____

Mihara, J.

WE CONCUR:

_____

Elia, Acting P. J.

_____

Márquez, J.